IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TEXAS DEMOCRATIC PARTY, GILBERTO HINOJOSA, Chair of the Texas Democratic Party, JOSEPH DANIEL CASCINO, SHANDA MARIE SANSING, and BRENDA LI GARCIA<br>　　　*Plaintiffs*, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | Case No. ___5:20-cv-00438___ |
| GREG ABBOTT, Governor of Texas; RUTH HUGHS, Texas Secretary of State, DANA DEBEAUVOIR, Travis County Clerk, and JACQUELYN F. CALLANEN, Bexar County Elections Administrator<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## PLAINTIFFS' COMPLAINT

## FACTS

1.　　Texas has an extensive history of disenfranchising voters and in this moment of national crisis, it appears poised to do so again without this Court's intervention

2.　　The citizens of this state are in the midst of the worst pandemic in modern history. Because of a novel coronavirus, and the disease it causes termed COVID-19, federal, state, county and city officials have ordered various limitations statewide, the central feature of which is to limit contact between persons.

1

3.      Public Health Officials warn that government ordered "social distancing" will probably be in effect for a number of weeks and, even after it is lifted, will in all likelihood  be re-imposed at additional intervals.

4.      Researchers at Harvard University describe three potential scenarios of upcoming events and all of them would include a significant barrier to wide-scale in-person voting over the next year.[1]

5.      An influential report from the Imperial College in the United Kingdom[2] that seemingly convinced the President of the United States to view the coronavirus as a public health emergency rather than a "hoax," sets out some startling facts about the severity and longevity of the crisis facing the public.

---

[1] https://ethics.harvard.edu/when-can-we-go-out
[2] https://www.imperial.ac.uk/media/imperial-college/medicine/sph/ide/gida-fellowships/Imperial-College-COVID19-NPI-modelling-16-03-2020.pdf



6.      According to experts, the expected outcome of the various measures ordered by levels of government, if effective, will be to "flatten the curve," as these diagrams demonstrate.

7.      These measures will not, of course, eliminate the risk of addition waves or localized infection hotspots.

8.       These circumstances, public health experts agree, should however extend the coronavirus infection rate over a longer time period allowing the medical community to prepare and handle the onslaught of severe cases.

9.      The University of Washington posts real-time data projections of peak death rates and hospitalizations.[3]

10.      These projections show that the peak infection rate of the first wave is later in Texas than other states.

11.      Although as a nation, we have not yet flattened our first curve of infections, some other countries have.

12.      For example, South Korea widely hailed as having a model response to the pandemic, upon releasing its citizens from social distancing orders, have experienced new emerging cases that have required re-imposition of those measures.[4]

13.      Indeed, it is very likely true that the globe, and Texas, is in for wave after wave of new infections until there is an effective treatment, a vaccine and/or greater than approximately 60% of the population survive the epidemic, creating some measure of "herd immunity".[5]

14.      Given these conditions, upcoming elections for federal, state, county, city and other local offices will be vastly impacted.

15.      Importantly, voter behavior will change.

16.      Historically, most voters in Texas elections vote "in person" where they have contact with electronic equipment, election personnel, other voters and observers.

17.      These very activities are now heavily discouraged by various government orders and are being discouraged in an enormous public education campaign.

---

[3] https://covid19.healthdata.org/projections
[4] https://www.nbcnews.com/news/world/south-korea-s-return-normal-interrupted-uptick-coronavirus-cases-n1176021
[5] http://www.euro.who.int/en/health-topics/communicable-diseases/influenza/data-and-statistics/pandemic-influenza/about-pandemic-phases

18.    Even were this pandemic to ease, certain populations will feel the need and/or be required to continue social distancing.

19.    The upcoming party primary runoff elections and the November General Election are certain to be influenced by these conditions.

20.    Recent events pertaining to elections scheduled this week in Wisconsin demonstrate the disarray and voter confusion that results from inadequately planned elections held during a pandemic.

21.    Importantly, the U.S. Supreme Court decision from yesterday served notice that cases such as this one that seek to remedy these conditions must proceed early and before an unknown deadline after which the federal courts will not decide the issues.

22.    The Supreme Court held, "[t]his Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Citing Purcell v. Gonzalez*, 549 U. S. 1 (2006) (per curiam).[6]

23.    In holding that it was too late for the Supreme Court to remedy constitutional harms in Wisconsin, the Supreme Court held, "The Court's decision on the narrow question before the Court should not be viewed as expressing an opinion on the broader question of whether to hold the election, or whether other reforms or modifications in election procedures in light of COVID–19 are appropriate. That point cannot be stressed enough."[7]

24.    These Plaintiffs file this suit at the earliest possible moment after receiving this Supreme Court guidance so as to ensure timely merits review.

---

[6] https://www.supremecourt.gov/opinions/19pdf/19a1016_o759.pdf
[7] *Id.*

5

25.     It is critically important that election officials and voters begin to prepare for an election where fewer ballots are cast in-person.

## STATE COURT CASE

26.     Given the pandemic conditions and their effects on election procedures, on March 27, 2020, some of these Plaintiffs filed a state court lawsuit seeking to determine application of state law.

27.     In that case, Plaintiffs contend that existing state law allows voters to elect to cast their ballots by mail under the circumstances of this pandemic.

28.     TEX. ELEC. CODE § 82.002 provides in full:

Sec. 82.002.  DISABILITY.  (a)  A qualified voter is eligible for early voting by mail if the voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health.
(b)  Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote under Subsection (a).

29.     Plaintiffs further contend that participating in social distancing, to prevent known or unknown spread of what Governor Abbott has described as an "invisible disease"[8] is a "sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health."

30.     Texas authorities support the conclusion that the mail-in ballots are permitted under these circumstances.

---

[8] https://www.kxan.com/news/coronavirus/live-gov-abbott-to-hold-press-conference-on-states-current-efforts-against-covid-19/

31.     According to Texas Attorney General Opinion KP-0009, "[t]he plain language of section 82.002 does not require that a person satisfy any specific definition or standard of 'disability' outside of the Election Code in order to qualify to vote by mail."  In that opinion, the Attorney General found that a person who claimed a disability but had not been adjudicated by the Social Security Administration nevertheless qualified for a mail ballot under Section 82.002. Op. Tex. Att'y Gen. No. KP-009 (2015).

32.     In a more recent opinion, the Attorney General opined, "a court would likely conclude that an individual civilly committed pursuant to chapter 841 and residing at the Center is eligible to vote by mail ..." Op. Tex. Att'y Gen. No, KP-0149 (2017). A person who considers herself to be confined at home in order to avoid the spread of disease plainly falls into the persons entitled to vote by mail under this statute and the Court should so declare to prevent uneven application of this provision and in order to give election officials and voters clarity on the matter.

33.     The manner and procedure of casting absentee ballots, which includes mail-in ballots, "is mandatory and directed by statutory requirements." *Tiller v. Martinez*, 974 S.W.2d 769, 775 (Tex. App.-San Antonio 1998, pet. dism'd w.o.j.).  The Secretary of State has argued that persons who submit mail ballots without authorization to do so are subject to having their ballots voided.

34.     A hearing will be held on April 15, 2020 in the state court case.

35.     The state case presents only state law claims seeking to interpret this one provision of state law; no federal constitutional claims are urged.

36.     The state has filed an intervention in the state court case but notably takes no position on the merits of whether people between the age of 18 and 65 can avail themselves of vote by mail procedures.[9]

37.     In the event  the state courts do not clarify that vote by mail is permitted for all voters over the age of 18 who are social distancing, the harms described in this case will be even more severe.

## ELECTION ADVISORY

38.     On April 2, 2020, the Texas Secretary of State issued an election advisory concerning "voting for individuals that may be affected by COVID-19, and in preparing for the conduct of elections in the context of this public health issue."[10]

39.     Unhelpfully, the advisory gives local election administrators no material guidance on who can avail themselves of the vote by mail procedures because of the pandemic.

40.     On the one hand, the Advisory envisions more voters using vote by mail: "Additional Ballot by Mail Supplies: Because there may be a higher volume of ballot by mail requests in 2020, we strongly recommend that you review your current supply of applications, balloting materials, and ballot stock for future elections. It is important you have the necessary supply on hand to meet increased requests you may receive."[11]

---

[9] Exhibit A – Intervention of State of Texas
[10] Exhibit B - ELECTION ADVISORY N0. 2020-14
[11] *Id.* at p. 7.

41.     On the other hand, the Advisory says only this as to who can vote by mail:

**Voting Procedures Authorized under the Texas Election Code.**

Below we have described some of the procedures that are authorized under Texas law that may be of assistance to voters that are affected by a recent sickness or a physical disability.

**Voting by Mail**

In Texas, in order to vote by mail, a voter must have a qualifying reason. A voter may vote early by mail if they:

will be away from their county on Election Day and during early voting;
are sick or disabled;
are 65 years of age or older on Election Day; or
are confined in jail, but eligible to vote.

One of the grounds for voting by mail is disability. The Election Code defines "disability" to include "a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health." (Sec. 82.002). Voters who meet this definition and wish to vote a ballot by mail must submit an application for ballot by mail.

42.     The Advisory gives no guidance as to what a disability may be under the statute.

43.     Worse still, the Advisory imagines that a situation where each county could enforce

their own voting methods based upon yet to be sought local court orders:

**Other Modifications to Voting Procedures:** A court order could provide for modifications to other voting procedures as necessary to address the impact of COVID-19 within the jurisdiction. For example, in 2014, Dallas County obtained a court order authorizing modified voting procedures for individuals affected by the Ebola quarantine, modeled on the procedures outlined in Section 105.004 of the Texas Election Code for certain military voters in hostile fire pay zones. If your county obtains a court order allowing modifications to voting procedures to address COVID-19, please send a copy of the court order to the Secretary of State's Office.

44.     Left without Court intervention, the state will march toward upcoming elections with no plan in place.

45.     Importantly, Article I, Section 28 of the Texas Constitution prescribes that: "No power of suspending laws in this State shall be exercised except by the Legislature." Tex. Const. Art. I, § 28.

46.     Thus, if Texas Courts or the Texas Secretary of State do not find that "disability" under this statute includes people who are social distancing, then effectively every voter under the age of 65 faces a legally significant increased burden on the voting rights in the current pandemic circumstances.

47.     Worse still, Texas has a history of threatening criminal prosecution of people who exercise their right to vote.

48.     Georgia recently announced a criminal investigation squad[12] of people who attempt to vote by mail and there is every reason to be concerned that Texas will follow suit.

49.     Events unfolding in Wisconsin demonstrate that lack of organized election procedures under the pandemic circumstances will result in harm to rights guaranteed by the federal constitution.

50.     Absent lawful, timely, effective state action, this court should ensure compliance with federal law by providing a remedy.

51.     This case should proceed so that the Court can timely determine, before the unknown *Purcell* deadline, the constitutional rights of these Plaintiffs and be in a position to do so

---

[12] https://www.ajc.com/news/state--regional-govt--politics/georgia-elections-chief-launches-effort-against-mail-voting-fraud/uKcFoPbbLnFC0A4nXihaLI/

in the event the state court rulings serve to harm these federal rights and/or the state court proceedings are delayed thus preventing timely state resolution of the state law issue.

## JURISDICTION AND VENUE

52.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 2284; and pursuant to 52 U.S.C. § 10301.  Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 2284, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.  Venue is proper pursuant to 28 U.S.C. §§ 1391(b).

## PARTIES

### Plaintiffs

53.     Plaintiff Texas Democratic Party is a political party formed under the Texas Election Code, whose address is 314 East Highland Mall Blvd. Suite 508, Austin, Travis County, TX 78752.

54.     Plaintiff Gilberto Hinojosa is Chairman of the Texas Democratic Party and a registered voter in Texas.

55.     Joseph Daniel Cascino is a registered voter in Travis County, Texas who is eligible to vote, is a resident of Travis County, Texas, a citizen of the United States and who voted in-person in the March 3, 2020 Texas Democratic Primary Election, desires to vote in the Texas Democratic Party Runoff Election and under the pandemic circumstances would seek to do so by mail-in ballot.

56.     Shanda Marie Sansing is a registered voter in Travis County, Texas who is eligible to vote, is a resident of Travis County, Texas, a citizen of the United States and who voted in-

person in the March 3, 2020 Texas Democratic Primary Election, desires to vote in the Texas Democratic Party Runoff Election and under the pandemic circumstances would seek to do so by mail-in ballot.

57.     Brenda Li Garcia is a registered voter in Bexar County, Texas who is eligible to vote, is a resident of Bexar County, Texas, a citizen of the United States and who voted in-person in the March 3, 2020 Texas Democratic Primary Election, desires to vote in the Texas Democratic Party Runoff Election and under the pandemic circumstances would seek to do so by mail-in ballot.

### Defendants

58.     Defendant Greg Abbot is the Governor of Texas and pursuant Article IV, Section I to the Texas Constitution is the chief executive officer of the State of Texas.

59.     Defendant Ruth Hughs is sued in her official capacity as the Texas Secretary of State and may be served with process at 900 Congress, Suite 300 Austin, Travis County, Texas 78701.

60.     Defendant Dana DeBeauvoir is sued in her official capacity as the Travis County Clerk and Election Administrator and may be served with process at 5501 Airport Blvd, Austin, Travis County, TX 78751.

61.     Defendant Jacquelyn F. Callanen, is sued in her official capacity as the Bexar County Elections Administrator and may be served with process at 1103 S. Frio, Suite 100, San Antonio, TX 78207

## CLAIMS

### Count 1
### Race and Language Minority Discrimination, Section 2, Voting Rights Act

62.      Plaintiffs reallege the facts set forth above.

63.      These Election Conditions[13] violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because they results in a denial of the right to vote on account of race and language minority, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process.

64.      These Election Conditions also violate Section 2 because they deny and abridges the right to vote on account of race and language minority.

### Count 2
### Race Discrimination, 14th Amendment

65.      Plaintiffs reallege the facts set forth above.

66.      These Election Conditions violate the Fourteenth Amendment to the Constitution of the United States because they purposely deny equal protection in voting to Plaintiffs and other minority voters on account of race and ethnic origin.

---

[13] As described in the Facts section above.

13

**Count 3**

**Race Discrimination, 15th Amendment**

67.     Plaintiffs reallege the facts set forth above.

68.     These Election Conditions violate the Fifteenth Amendment to the Constitution of the United States because they purposely deny and abridge the right to register and vote to Plaintiffs and other minority voters on account of race and ethnic origin.

**Count 4**

**Non-racial discrimination in Voting, 14th Amendment**

69.     Plaintiffs reallege the facts set forth above.

70.     These Election Conditions violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because they mandate arbitrary and disparate treatment of voters and deny equal access to the right to vote to eligible citizens.

71.     These Election Conditions impose <u>severe burdens</u> on voters, in time, inconvenience and expense.  The burden is severe whether measured by how it affects a single voter or by how many voters it affects.

72.     These Election Conditions <u>facially discriminate</u> between classes of voters (such as between those having and those over the age of 65 or those with a disability that do not fit under the ultimate definition the state or various counties impose).

73.     Either the <u>severe burden</u> described above, standing alone <u>as applied</u>, or the <u>facial discrimination</u>, standing alone, are sufficient to require that These Election Conditions be judged by strict scrutiny, and can survive only if their specific terms meet a compelling state interest

14

(actual, not hypothetical) and if each of its provisions is narrowly tailored to meet that compelling interest in the least restrictive way.  In this inquiry, the burden of proof is on Texas.  These Election Conditions cannot meet this exacting test.

74.    Indeed, these Election Conditions cannot even meet the less exacting test (applicable where a voting regulation is not burdensome and does not classify on its face) of balancing Texas' interest claimed here (modest at best) against the critically important interests of Plaintiffs and other Texas registered voters who are disfranchised by these Election Conditions, especially as that balancing test is applied against the background of Texas' longstanding and recent history of purposeful racial and ethnic discrimination, and in light of the number of poor, disabled and under age 65 voters targeted by these Election Conditions.

**Count 5**

**Denial of Free Speech, First Amendment applied through the 14th Amendment**

75.    Plaintiffs reallege the facts set forth above.

76.    Voting and participating in the election process is a form of expression which is the ultimate in free speech and association entitled to First Amendment protection.  In light of the Supreme Court's cases giving strong First Amendment protection to campaign funds spent to influence voters, the voters themselves can hardly be entitled to less protection.

77.    As a restriction on free speech and association, these Election Conditions must be judged by the same strict scrutiny outlined above, a scrutiny that these Election Conditions cannot survive.

## Count 6

### Abridgment of the Right to Vote based on Age, 26th Amendment

78.     Plaintiffs reallege the facts set forth above.

79.     These Election Conditions amount to abridgment of the right to vote based on the age of the voter.

80.     All voters under the age of 65 face an unconstitutional burden, because of their age, to their fundamental right to vote.

## Count 7

### Bush v. Gore

81.     Plaintiffs reallege the facts set forth above.

82.     These Election Conditions amount to disparate election rules applied to the voters within this state.

83.     For the reasons stated in the U.S. Supreme Court decision in *Bush v. Gore*, these conditions must be enjoined for being violative of constitutional guarantees.

## EQUITY

84.     Plaintiffs have no adequate remedy at law.  Unless restrained, Defendants will injure and continue to injure Plaintiffs and other Texas voters in the manner set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

85.     Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure Rule 57, declaring that these Election Conditions are illegal and

16

unconstitutional as described above, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. 10301 and the First, Fourteenth, Fifteenth and Twenty-Sixth Amendments to the United States Constitution.

86.     Enjoin the Defendants, their agents, employees, and those persons acting in concert with them, from enforcing or giving any effect to the requirements of these Election Conditions, including enjoining Defendants from conducting any elections utilizing these Election Conditions.

87.     Make all further orders as are just, necessary, and proper to ensure complete fulfillment of this Court's declaratory and injunctive orders in this case.

88.     Issue an order requiring Defendants to pay Plaintiffs' costs, expenses and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by the Voting Rights Act and the Civil Rights Attorneys Fees Awards Act of 1976, 52 U.S.C. §§ 10310(e) & 42 U.S.C. § 1988.

89.     Retain jurisdiction and require Texas to obtain preclearance pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c) with respect to its voting practices and procedures.

90.     Grant such other and further relief as it deems proper and just.

This the 6th day of April, 2020.

Respectfully submitted,

TEXAS DEMOCRATIC PARTY

By: /s/ Chad W. Dunn
Chad W. Dunn
General Counsel
State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn, LLP
13231 Champion Forest Drive, Suite 406
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com

Dicky Grigg
State Bar No. 08487500
Law Office of Dicky Grigg, P.C.
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: 512-474-6061
Facsimile: 512-582-8560
dicky@grigg-law.com

Martin Golando
The Law Office of Martin Golando, PLLC
SBN #: 24059153
N. Saint Mary's, Ste. 700
San Antonio, Texas 78205
(210) 892-8543
martin.golando@gmail.com

ATTORNEYS FOR PLAINTIFFS

18