IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DIVISION OF TEXAS
SAN ANTONIO DIVISION

**FILED**

MAY 1 1 2020

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| TEXAS DEMOCRATIC PARTY, GILBERTO HINOJOSA, Chair of the Texas Democratic Party, JOSEPH DANIEL CASCINO, SHANDA MARIE SANSING, and BRENDA LI GARCIA, *Plaintiffs,* | |
| v. | Case No.: 5:20-cv-00438 **FB** |
| GREG ABBOTT, Governor of Texas, RUTH HUGHS, Texas Secretary of State, KEN PAXTON, Texas Attorney General, DANA DEBEAUVOIR, Travis County Clerk, JACQUELYN F. CALLANEN, Bexar County Elections Administrator, *Defendants.* | |

**MOTION OF LEAGUE OF UNITED LATIN AMERICAN CITIZENS AND TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS TO INTERVENE AS PLAINTIFFS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

TO THE HONORABLE JUDGE FRED BIERY:

Proposed Plaintiff-Intervenors League of United Latin American Citizens ("LULAC") and

Texas League of United Latin American Citizens ("Texas LULAC") (together, "LULAC

Plaintiffs") seek to intervene in this proceeding because it affects the organizations' core mission

and their members' fundamental right to vote.

LULAC is the largest and oldest Latino civil rights organization in the United States with

over 132,000 members nationwide and over 1,000 local councils. Texas LULAC is the statewide

chapter of LULAC and seeks to protect the voting rights of its over 20,000 members and the

broader Latino community. This year, in the midst of an ongoing public health crisis, that mission

includes ensuring that Latino voters are able to safely cast their ballots by mail, rather than having

to choose between risking their health by voting in person or not voting at all. Unfortunately,

Defendants have sought to deny access to absentee ballots to the majority of Texans, including

1

LULAC Plaintiffs' members, by prohibiting voters from applying for mail ballots pursuant to the existing disability exception under state law. By enforcing unreasonably restrictive eligibility criteria, and by threatening to prosecute organizations like LULAC Plaintiffs that seek to advise voters about the disability option, Defendants have imposed unconstitutional burdens on LULAC Plaintiffs' rights to speech and association and their members' rights to vote, thereby violating the First, Fourteenth, and Twenty-Sixth Amendments to the United States Constitution, as well as Section 2 of the Voting Rights Act (the "VRA").

In order to protect these constitutional and federal statutory rights, LULAC Plaintiffs hereby move to intervene as plaintiffs in this action. LULAC Plaintiffs are entitled to intervention as of right under Federal Rule of Civil Procedure 24(a). In the alternative, the Court should permit LULAC Plaintiffs to intervene under Federal Rule of Civil Procedure 24(b) because its motion is timely, and the claims proposed in their Complaint, *see* Ex. 1 ("LULAC Compl."), present questions of law and fact that overlap with the pending litigation.

## FACTUAL BACKGROUND

This Summer and Fall, the ongoing public health crisis triggered by the widespread outbreak of COVID-19 will severely affect voting in Texas. LULAC Compl. ¶¶ 36–43. As a result of the pandemic, many voters, including members of Texas LULAC, will seek to vote by mail, if permitted, in order to avoid crowded in-person polling locations where they risk contracting the highly-contagious disease. *See id.* ¶ 38. But many Texans may not be able to cast absentee ballots because the State of Texas maintains among the most restrictive absentee voting eligibility criteria in the nation, which exclude the majority of Texas voters. *See id.* ¶¶ 38–39. While a Texas state court judge recently ruled that the State must permit voters to rely on COVID-19 as an excuse to vote by mail, Defendants have ignored this ruling. *See id.* ¶¶ 45–49. They continue to seek

enforcement of their extremely restrictive policy on vote by mail—including by appealing the state court's decision, relying on an asserted automatic stay, and insisting on the decision's limited application to a single county—and have gone so far as to demand that county officials follow their restrictive policy and threaten to prosecute any voter who claims the right to vote by mail based on an inability to vote in person due to COVID-19, and any third parties who educate or assist such voters. *See id.* Absent relief from this Court, LULAC Plaintiffs and their members have no choice but to either follow Defendants' restrictive vote by mail policies—sacrificing either their health or their vote—or risk criminal prosecution.

On April 7, 2020, the Texas Democratic Party and several individual Plaintiffs filed this litigation alleging that, in light of the COVID-19 pandemic, Defendants' restrictive eligibility criteria for voting by mail violate their own and their members' rights under the First, Fourteenth, and Twenty-Sixth Amendments to the Constitution, as well as Section 2 of the VRA, among other claims. *See* Dkt. No. 1. Three weeks later, and before Defendants had entered an appearance in the matter, on April 29, 2020, Party Plaintiffs amended their Complaint and filed a Motion for Preliminary Injunction on their First, Fourteenth, and Twenty-Sixth Amendment claims, among others. *See* Dkt. Nos. 9 ("Party Pls.' Am. Compl."), 10. Four days later, on May 3, 2020—only six working days before LULAC Plaintiffs filed this Motion—Defendants' counsel first entered their appearance in the litigation. *See, e.g.*, Dkt. Nos. 17–19. Defendants have not yet responded to the Party Plaintiffs' motion for a preliminary injunction. A hearing on the motion has been set for May 15, 2020, and no substantive proceedings have otherwise occurred in the litigation.

LULAC Plaintiffs now seek to intervene in the pending litigation. Texas LULAC was founded in 1929 as the Texas chapter of the League of United Latin American Citizens, the nation's oldest and largest Latino civil rights organization. These nonprofit membership

organizations are dedicated to protecting the civil rights of Latinos in Texas, and as part of that mission, have invested significant time and resources promoting voting, voting rights, and civic participation among their members and within their communities. Unlike the Party Plaintiffs, LULAC Plaintiffs are nonpartisan organizations, with over 20,000 members across Texas, including Democrats, Republicans, and Independents.

LULAC Plaintiffs seek to challenge Defendants' restrictions on absentee voting in this year's upcoming elections. Like Party Plaintiffs, LULAC Plaintiffs allege that in light of the COVID-19 pandemic, Defendants' unreasonably restrictive eligibility criteria for absentee voting violate their members' rights to speech and to vote as protected by the First, Fourteenth, and Twenty-Sixth Amendments to the Constitution, and further violate Section 2 of the VRA based on the particular harms Defendants' policies will impose on Latino voters like LULAC Plaintiffs' members. *Compare* Party Pls.' Am. Compl. ¶¶ 79–81, 86–94, 99–101, *with* LULAC Compl. ¶¶ 53–73. LULAC Plaintiffs also allege that Defendants' unreasonably restrictive vote by mail policies—alongside Attorney General Paxton's draconian threat to prosecute third party organizations that advise voters that they can vote by mail pursuant to the state's disability exception if they fear contracting coronavirus—unconstitutionally burden Plaintiffs' First Amendment rights of free speech and association. *See* LULAC Compl. ¶¶ 64–69.

## ARGUMENT

## I.  LULAC Plaintiffs' Are Entitled to Intervene as of Right Pursuant to Rule 24(a).

Pursuant to Federal Rule of Civil Procedure 24(a), a court must permit a third party to intervene as of right in a litigation if four conditions are met:

> (1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the

4

potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

*John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed," and "[f]ederal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015); *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)) (internal quotation marks omitted).

### A. LULAC Plaintiffs' Motion to Intervene Is Timely.

LULAC Plaintiffs' Motion to Intervene (the "Motion") is timely. The purpose of the timeliness analysis is to "guard against prejudicing the original parties by the failure to apply sooner." *John Doe No. 1*, 256 F.3d at 375. The analysis is contextual, with courts often relying on four factors as a framework:

> (1) how long the potential intervener knew or reasonably should have known of her stake in the case into which she seeks to intervene; (2) the prejudice, if any, the existing parties may suffer because the potential intervener failed to intervene when she knew or reasonably should have known of her stake in that case; (3) the prejudice, if any, the potential intervener may suffer if the court does not let her intervene; and (4) any unusual circumstances that weigh in favor of or against a finding of timeliness.

*Id.* at 376. Each of the four factors weighs in favor of LULAC Plaintiffs.

First, the Motion was filed only one month after the litigation began, and less than two weeks after the Party Plaintiffs filed an amended complaint and motion for preliminary injunction. *See* Dkt. Nos. 1, 9, 10. Defendants' counsel entered their appearances in the action just six working days ago, *see, e.g.*, Dkt. No 17; Defendants have not answered; and there have been no substantive proceedings in the matter, let alone trial or final judgment. Such circumstances favor a finding of

timeliness. *See Wal–Mart*, 834 F.3d at 565 (finding a proposed intervenor's motion timely where it sought intervention before discovery progressed and did not seek to delay or reconsider phases of the litigation that had already concluded); *John Doe No. 1*, 256 F.3d at 377 (finding that an approximately one month delay in filing motion to intervene, prior to trial or entry of judgment, is "not unreasonable"); *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) (finding that the filing of a motion to intervene prior to the entry of judgment "favors timeliness").

Second, these same circumstances confirm that LULAC Plaintiffs' intervention does not prejudice the existing parties. *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("Prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation."). LULAC Plaintiffs have not delayed in seeking to intervene, and the Party Plaintiffs do not oppose the Motion. Moreover, while Defendants oppose the Motion for unstated reasons, it would be nonsensical for them to claim any prejudice when their own counsel appeared in the action just six working days before LULAC Plaintiffs filed this Motion.

Third, LULAC Plaintiffs will be prejudiced by a denial of this Motion. The existing litigation addresses questions around whether and how Texans—including Texas LULAC's over 20,000 members—may exercise their fundamental right to vote during a pandemic that has disproportionately impacted the Latino community. *See, e.g.*, LULAC Compl. ¶¶ 4, 35, 41–42. The question of whether Defendants' actions improperly abridge or deny the rights of minority voters is central to the pending litigation, and directly implicates the rights and interests of LULAC Plaintiffs' members and communities. Moreover, the outcome of the litigation will directly impact LULAC Plaintiffs' ability to engage in effective voter engagement activity central to their mission. An adverse outcome would severely burden LULAC Plaintiffs' First Amendment rights and their

Case 5:20-cv-00438-FB   Document 30   Filed 05/11/20   Page 7 of 13

members' exercise of their fundamental right to vote. LULAC Plaintiffs have a strong interest in protecting those rights both through trial and, if necessary, on appeal. *See Edwards,* 78 F.3d at 1002–03 (finding that potential intervenors would be prejudiced if denied the opportunity to appeal the ruling in an action in which they sought to intervene).

Finally, Party Plaintiffs' pending Motion for a Preliminary Injunction is an unusual circumstance that counsels in favor of permitting intervention. Denial of intervention will preclude LULAC Plaintiffs from participating in the upcoming preliminary injunction hearing and representing their members' interests in the crafting of any potential remedy.[1]

## B. LULAC Plaintiffs' Interests Directly Relate to the Matter that Forms the Basis of the Controversy in the Pending Litigation.

The "interest test" seeks to determine whether the potential intervenor has a "'direct, substantial, [and] legally protectable' interest in the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene." *John Doe No. 1*, 256 F.3d at 379 (quoting *Espy,* 18 F.3d at 1207); *see also Wal–Mart*, 834 F.3d at 566 ("The touchstone of the inquiry is whether the interest alleged is legally protectable."). The requirement "may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).

LULAC Plaintiffs challenge the exact same absentee voting restrictions as Party Plaintiffs. The organizations and their members plainly have a legally-protectable interest in whether the Constitution and VRA permit these restrictions to deny or severely burden their right to free speech and association and their members' exercise of the fundamental right to vote in the upcoming

---

[1] To the extent intervention is granted, LULAC Plaintiffs will seek to participate in the preliminary injunction proceedings. LULAC Plaintiffs will file their own preliminary injunction motion within two days of their Motion to Intervene being granted, and do not seek to delay these proceedings nor any other existing deadlines in the case.

7

elections. *See League of United Latin American Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421

(5th Cir. 2011) (finding a legally-protectable interest where the intervenor sought

to protect his right to vote); *see also Wal-Mart*, 834 F.3d at 568–69 (finding a legally protectable

interest where the intervenor is subject to the regulations at issue in an action). But the impact on

LULAC Plaintiffs' interests is even more palpable here, where, as just one example, Party

Plaintiffs claim that Defendants' absentee ballot eligibility requirements deny "minority voters"—

like most of Texas LULAC's over 20,000 members—"an equal opportunity to participate in the

political process" in violation of the VRA. *See* Party Pls.' Am. Compl. ¶ 80. Minority voters like

LULAC's members have a direct, protectable, and particularly substantial interest in whether

Defendants' enforcement of its election laws violates their right to vote under the VRA.

### C. Disposition of the Existing Litigation May Impair or Impede LULAC Plaintiffs Ability to Protect Their and Their Members' Interests.

To satisfy the third prong of the intervention analysis, a proposed intervenor must show

only that "disposition of the action may impair or impede their ability to protect their interests."

*See Brumfield*, 749 F.3d at 344. An intervenor's interest "is impaired by the *stare decisis* effect of

the district court's judgment." *Espy*, 18 F.3d at 1207.

Resolution of the pending litigation may impair not only the interests of LULAC Plaintiffs

and their members, but also LULAC Plaintiffs' ability to protect those interests. An outcome in

Defendants' favor would have a persuasive effect on any separate litigation by LULAC Plaintiffs

asserting constitutional and statutory claims related to Texas' vote by mail restrictions. Moreover,

a less than adequate outcome in the Party Plaintiffs' favor might only partially vindicate LULAC

Plaintiffs' rights and interests, and if achieved through settlement or consent decree, may prevent

LULAC Plaintiffs from providing input or appealing issues of particular importance to their

members and community. *See Espy*, 18 F.3d at 1207 (describing the "legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal").

**D. Party Plaintiffs May Not Adequately Represent LULAC Plaintiffs' Interests.**

Finally, a potential intervenor must carry a "minimal" burden of showing that the existing plaintiffs' representation of its interests "may be inadequate." *Espy*, 18 F.3d at 1207. LULAC Plaintiffs carry that burden here. As nonpartisan organizations, LULAC Plaintiffs seek to protect and vindicate the rights of over 20,000 members and their communities, including Democrats, Republicans, and Independents, regardless of political affiliation. While their interests in this litigation may overlap to some extent with those of the Party Plaintiffs, the Party Plaintiffs—partisan organizations and officials whose loyalties are to their own members—may not adequately represent the interests of *all* of LULAC Plaintiffs' members. Moreover, as Latino membership organizations, LULAC Plaintiffs mission is to defend the civil rights of the Latino community, which has been disproportionately impacted by COVID-19, and will be disproportionately impacted by the unavailability of absentee voting. *See* LULAC Compl. ¶¶ 4, 35, 41–42 (describing the high rates of COVID-19 among Texas Latinos, and the risks of voting in person for Latino voters). While LULAC Plaintiffs' interest *may* overlap the interest of the Party Plaintiffs' interest, it not identical. Finally, while LULAC Plaintiffs' legal claims overlap in large part with the Party Plaintiffs, they are distinguishable, and LULAC Plaintiffs have an interest in pursuing their own legal theories and claims to protect their rights and the rights of their members.

LULAC Plaintiffs meet each of the four preconditions to intervention as of right. As such, under Federal Rule of Civil Procedure 24(a), LULAC Plaintiffs are entitled to intervene.

**II. Even If LULAC Plaintiffs Are Not Permitted to Intervene as of Right, Permissive Intervention Is Appropriate.**

Even where intervention is not required as of right, a court may still permit a third party to intervene where three conditions are met: (1) the motion to intervene is timely; (2) the potential intervener "has a claim or defense that shares with the main action a common question of law or fact"; and (3) intervention will not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b). Permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (en banc).

As discussed above, LULAC Plaintiffs' motion is timely. *See supra* at 5–7. Moreover, many of LULAC Plaintiffs' claims share common questions of fact and law with those of the Party Plaintiffs, including their claims under the First, Fourteenth, and Twenty-Sixth Amendments, and the VRA. Intervention will not delay the ongoing proceedings or otherwise prejudice the existing parties in any respect. The litigation is still at its inception, and even with respect to Party Plaintiffs' pending motion for preliminary injunction, if permitted to intervene, LULAC Plaintiffs will not seek to stay or delay resolution of Party Plaintiffs' motion, but will merely seek to represent their interests and the interests of their members in the upcoming proceeding. *See supra* at 7 n.1.

Each discretionary factor favors permitting LULAC Plaintiffs to intervene. In addition, judicial economy favors intervention, particularly considering that any separate litigation by LULAC Plaintiffs would be brought in the same courthouse as the pending litigation.

## CONCLUSION

Because this litigation directly affects the fundamental rights of LULAC Plaintiffs and their members under the First, Fourteenth, and Twenty-Sixth Amendments, and Section 2 of the Voting Right Act, LULAC Plaintiffs respectfully request that the Court grant their Motion to Intervene in this litigation.

DATED: May 11, 2020

Respectfully submitted,

/s/ Luis Roberto Vera, Jr.
Luis Roberto Vera, Jr.

Danielle M. Lang*
Rob Weiner*
Ravi S. Doshi*
Molly E. Danahy*
Jonathan Diaz*
Campaign Legal Center
1101 14th St. NW Ste, 400
Washington, DC 20005
Telephone: (202) 736-2200
Facsimile: (202) 736-2222
dlang@campaignlegal.org
rweiner@campaignlegal.org
rdoshi@campaignlegal.org
mdanahy@campaignlegal.org
jdiaz@campaignlegal.org

LULAC National General Counsel
Law Offices of Luis Roberto Vera, Jr. &
Associates
407 W. Ware Blvd.
San Antonio, TX 78221
Telephone: (210) 225-3300
lrvlaw@sbcglobal.net

*motions for admission pro hac vice
forthcoming

Counsel for LULAC Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May, 2020, the following documents were traditionally filed with the Clerk of the Court:

- Motion to Intervene of League of United Latin American Citizens and Texas League of United Latin American Citizens
- Complaint of League of United Latin American Citizens and Texas League of United Latin American Citizens (attached as Exhibit 1 to Motion to Intervene)
- Proposed Order

The following counsel were thereafter served via the Court's CM/ECF system:

Counsel for Defendants Abbott, Hughs, and Paxton:

Anne Marie Mackin
Office of the Attorney General
300 West 15th Street
General Litigation-11th Floor
Austin, TX 78701
Phone: (512) 936-0161
Email: anna.mackin@oag.texas.gov

Michael Abrams
Cory A. Scanlon
Office of the Attorney General
P.O. BOx 12548
Capitol Station
Austin, TX 78711-2548
Phone: (512) 463-2120
Email: michael.abrams@oag.texas.gov
Email: cory.scanlon@oag.texas.gov

Counsel for Defendant Callanen:

Robert D. Green
Bexar County District Attorney
Civil Division
101 W. Nueva
7th Floor
San Antonio, TX 78205
Phone: (210) 335-2146
Email: robert.green@bexar.org

Counsel for Defendant DeBeauvoir:

Leslie W. Dippel
Sherine Elizabeth Thomas
Cynthia W. Veidt
Andrew M. Williams
Travis County Attorney's Office
PO Box 1748
Austin, TX 78767
Phone: (512) 854-2911
Email: leslie.dippel@traviscountytx.gov
Email: sherine.thomas@traviscountytx.gov
Email: cynthia.veidt@traviscountytx.gov
Email: drew.williams@traviscountytx.gov

Counsel for Plaintiffs:

K. Scott Brazil
Brazil & Dunn
13231 Champion Forest Dr.
Suite 406
Houston, TX 77069
Phone: (281) 580-6310
Email: scott@brazilanddunn.com

Chad W. Dunn
Brazil & Dunn
4407 Bee Caves Road
Building 1, Suite 111
Austin, TX 78746
Phone: (512) 717-9822
Email: chad@brazilanddunn.com

Martin Anthony Golando
The Law Office of Martin Golando, PLLC
405 N. St. Mary's Street, Suite 700
San Antonio, TX 78205
Phone (210) 892-8543
Email: martin.golando@gmail.com

Richard Alan Grigg
Law Offices of Dicky Grigg, PC
4407 Bee Caves Road
Building 1, Suite 111
Austin, TX 78746
Phone: (512) 474-6061
Email: dicky@grigg-law.com

Robert Leslie Meyerhoff
Texas Democratic Party
314 E. Highland Mall Blvd. #508
Austin, TX 78752
Phone: (512) 478-9800
Email: rmeyerhoff@txdemocrats.org

                                        *s/ Luis Roberto Vera, Jr.*
                                        Luis Roberto Vera, Jr.