IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Texas Democratic Party, Gilbert Hinojosa, Chair of the Texas Democratic Party, Joseph Daniel Cascino, Shanda Marie Sansing, and Brenda Li Garcia, *Plaintiffs,* | § § § § § § | |
| v. | § § | Civil Action No. 5:20-CV-00438-FB |
| Greg Abbott, Governor of Texas; Ruth Hughs, Texas Secretary of State, Dana Debeauvoir, Travis County Clerk, and Jacquelyn F. Callanen, Bexar County Elections Administrator, *Defendants.* | § § § § § § | |

---

## STATE DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

MICHAEL R. ABRAMS
Texas Bar No. 24087072
ANNE MARIE MACKIN
Texas Bar No. 24078898
CORY A. SCANLON
Texas Bar No. 24104599
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
michael.abrams@oag.texas.gov
anna.mackin@oag.texas.gov
cory.scanlon@oag.texas.gov

*Counsel for State Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Texas Democratic Party, Gilbert Hinojosa, | § | |
| Chair of the Texas Democratic Party, | § | |
| Joseph Daniel Cascino, Shanda Marie | § | |
| Sansing, and Brenda Li Garcia, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 5:20-CV-00438-FB |
| | § | |
| Greg Abbott, Governor of Texas; Ruth | § | |
| Hughs, Texas Secretary of State, Dana | § | |
| Debeauvoir, Travis County Clerk, and | § | |
| Jacquelyn F. Callanen, Bexar County | § | |
| Elections Administrator, | § | |
| *Defendants.* | § | |

## I.   FINDINGS OF FACT[1]

*COVID-19 and the Texas Government's Response Efforts*

1.      In late 2019, the novel coronavirus (COVID-19), an infectious respiratory disease spread through droplets of saliva and mucous expelled from the human body, was discovered in China and later infected individuals in the United States. Declaration of Jeffrey Klausner, M.D. ("Klausner Decl.") ¶¶ 14–17. COVID-19 has been recognized globally as a contagious respiratory virus. Medical evidence indicates that COVID-19 poses the greatest health risk to those who are over 65 and who have underlying health conditions. *Id.* ¶¶ 25–28.

2.      On March 13, 2020, Governor Greg Abbott exercised his authority under the Texas Disaster Act of 1975, TEX. GOV'T CODE § 418.001, *et seq.*, and declared a state of disaster in all of Texas's 254 counties. Proclamation (Mar. 13, 2020 11:20 a.m.).[2]

3.      Since the disaster declaration, Texas state officials have adopted measures to ensure the

---

[1] All Findings of Fact that would more appropriately be classified as Conclusions of Law are hereby adopted as such, and all Conclusions of Law that would more appropriately be classified as Findings of Fact are likewise adopted as such.
[2] *Available at* https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/proc03132020.pdf.

uniformity and integrity of elections in light of COVID-19. To date, the Governor has issued proclamations that, among other things, ordered the special election for Senate District 14 to be held on July 14, 2020 (rather than an earlier date as prescribed by the Texas Election Code);[3] allowed political subdivisions to postpone elections scheduled for May 2, 2020 to November 3, 2020;[4] and postponed the May 26, 2020 primary runoff election to July 14, 2020.[5]

4.      On March 18, 2020, the Secretary of State issued an advisory providing guidance to local election officials on postponing elections scheduled for May 2, 2020.[6]

5.      On May 11, 2020, Governor Abbott issued a proclamation expanding the early voting period for the July 14 runoff election,[7] providing that "early voting by personal appearance shall begin on Monday, June 29, 2020, and shall continue through the fourth day before election day, excluding any legal state or federal holidays."[8]

6.      The purpose of the additional dates for early voting is "to ensure that elections proceed efficiently and safely when Texans go to the polls to cast a vote in person during early voting or on election day" by providing election officials with sufficient time to "implement appropriate social distancing and safe hygiene practices."[9]

7.      The Secretary of State's Office also has alerted election officials to the Governor's May 11 proclamation and noted that counties have the "flexibility to offer voters extended early voting hours."[10]

---

[3] Tex. Gov. Proclamation (Mar. 16, 2020 7:30 p.m.) *available at*
https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/proc3162020.pdf.
[4] Tex. Gov. Proclamation (Mar. 18, 2020 10:00 a.m.) *available at*
https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/proc03182020.pdf.
[5] Tex. Gov. Proclamation (Mar. 20, 2020 6:35 p.m.) *available at*
https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/proc03202020.pdf.
[6] Texas Secretary of State, *Election Advisory No. 2020-12 Actions for May 2, 2020 Uniform Election Date* (March 18, 2020), *available at* https://www.sos.state.tx.us/elections/laws/advisory2020-12.shtml.
[7] *See* Tex. Gov. Proclamation (May 11, 2020 5:30 p.m.) *available at*
https://lrl.texas.gov/scanned/govdocs/Greg%20Abbott/2020/proc05112020.pdf
[8] *Id.* at 3.
[9] *Id.*
[10] Mass Email re: Proclamation regarding early voting for July 14, 2020 Elections (May 11, 2020).

8.      The advisory explained further that the State of Texas is receiving $29.4 million, through a grant from the federal government, to "prevent, prepare for, and respond to coronavirus, domestically or internationally, for the 2020 Federal election cycle."[11] Those funds will be sub-granted to Texas counties.

9.      The Secretary of State will provide "detailed recommendations for protecting the health and safety of voters and election workers at the polls" and work closely with election officials "to ensure that our elections are conducted with the utmost safety and security."[12]

10.     County election officials in Texas are preparing to hold in-person elections safely in the context of COVID-19. These measures include but may not be limited to:

    a.    training poll workers to maximize social distancing inside the polling place;

    b.    utilizing plexiglass barriers to shield poll workers from voters at check-in;

    c.    providing fresh protective masks for all poll workers each day of early voting and on election day;

    d.    placing hand sanitizer and disinfecting wipes throughout the polling place;

    e.    providing cotton-swab styluses for use on the electronic ballot machine; and

    f.    sanitizing electronic ballot machines after each use.

Declaration of Bruce Sherbet ("Sherbet Decl.") ¶¶ 4, 6.

11.     County election officials may adopt safeguards in addition to those outlined above. *Id.* ¶ 6.

12.     The measures outlined above will reduce the risk of transmission of COVID-19 at polling sites in the State's upcoming elections. Klausner Decl. ¶¶ 40–44.

*Voting by Mail in Texas*

13.     Texas voters may apply to vote by mail in one of four instances—if they: (1) anticipate being absent from their county of residence; (2) have a disability that prevents them from appearing at the

_____

[11] *Id.*
[12] *Id.*

polling place; (3) are 65 or older; or (4) are confined in jail. TEX. ELEC. CODE § 82.001–.004.

14.     The Texas Legislature defines "disability" for the purposes of the Election Code to allow a qualified voter to vote by mail if the "voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health." TEX. ELEC. CODE § 82.002(a). This provision for sick or physically disabled voters to vote by mail has existed since 1935. Acts of 1935, 44th Leg., 2nd C.S., ch. 437, § 1, 1944 Tex. Gen. Laws 1700, 1700–01 (recodified 1985) (current version codified at TEX. ELEC. CODE § 82.002).

*State Court Litigation*

15.     On March 23, 2020, the Texas Democratic Party and two individual voters sued Travis County Clerk Dana Debeauvoir and the Texas Secretary of State, seeking a declaration that the definition of "disability" under the Election Code applies to all voters who "believe they should practice social distancing in order to hinder the known or unknown spread of a virus or disease."

16.     Plaintiffs non-suited their claims against the Secretary of State. The State of Texas intervened by and through its Attorney General and participated in the hearing on the state court plaintiffs' application for temporary injunction.

17.     On April 17, 2020, a Travis County district court held that any Texas voter "without established immunity [to COVID-19] meet[s] the plain language definition of disability" and is therefore eligible to apply to vote by mail in the upcoming July and November elections.

18.     The State of Texas filed an expedited appeal of the Travis County district court injunction in the Texas Third Court of Appeals which was transferred to the Fourteenth Court of Appeals, where it is pending.

19.     The State of Texas filed a petition for writ of mandamus in the Texas Supreme Court seeking to compel county election officials to apply Section 82.002 in a manner that requires more than the mere fear of COVID-19 to qualify as "disabled" under the Election Code's definition. *See* <u>Exhibit A</u>,

5

*In re State of Texas*, No. 20-0394, Petition for Writ of Mandamus (Tex. 2020).

## II.   CONCLUSIONS OF LAW

*Abstention*

1.      Under the *Pullman* abstention doctrine, it is appropriate for a federal court to refuse to hear a case pending resolution of a novel question of state law. *R. R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499–500 (1941).

2.      "The *Pullman* case establishes two prerequisites for *Pullman* abstention: (1) there must be an unsettled issue of state law; and (2) there must be a possibility that the state law determination will moot or present in a different posture the federal constitutional questions raised." *Palmer v. Jackson*, 617 F.2d 424, 428 (5th Cir. 1980).

3.      Whether the Texas Election Code's definition of "disability" for purposes of voting by mail includes any individual practicing social distancing due to fear of COVID-19 is a question of state law that will be unsettled until resolution of either the appeal pending in the Fourteenth Court of Appeals or the State of Texas's petition for writ of mandamus in the Texas Supreme Court.

4.      If the Texas Supreme Court holds that the Texas Election Code's definition of "disability" includes any individual practicing social distancing due to the fear of COVID-19, Plaintiffs' request for a preliminary injunction could become moot, or any potential federal question before this Court in connection with Plaintiffs' claims will be presented in a different light. *See id.*

5.      The mere fact that a case involves voting does not render *Pullman* abstention inappropriate. *See, e.g., Justice v. Hosemann*, 771 F.3d 285, 301 n.14 (5th Cir. 2014); *Moore v. Hosemann*, 591 F.3d 741, 745–46 (5th Cir. 2009); *see also Harris v. Samuels*, 440 F.2d 748, 752–53 (5th Cir. 1971).

6.      In light of the unsettled state law that is necessary to resolve the claims before the Court, this Court finds that *Pullman* abstention is warranted and dismisses Plaintiffs' suit without prejudice. *See Palmer*, 617 F.2d at 428, 432.

7.    The Court finds that, alternatively, were it not to abstain under *Pullman*, the application for preliminary injunction should be denied in accordance with the following Conclusions of Law.

*Preliminary Injunction*

8.    To obtain a preliminary injunction, the applicants must show "(1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) their substantial injury outweighs the threatened harm to the party to be enjoined; and (4) granting the preliminary injunction will not disserve the public interest." *Voting for Am. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).

9.    The party seeking relief by preliminary injunction must "clearly carr[y] the burden of persuasion on all four requirements" to be entitled to this "extraordinary remedy." *Lakey*, 667 F.3d at 574 (quoting *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252–53 (5th Cir. 2012)).

10.    Even if a movant satisfies all four elements, this Court retains discretion to deny a preliminary injunction. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

*Standing and Sovereign Immunity*

11.    Under *Ex parte Young*, state officials in their official capacities retain immunity from suit unless the officials' enforcement of state law violates federal law and the officials have a "particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014); *see also City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019).

12.    The State Defendants[13] lack the requisite enforcement connection to Texas Election Code §§ 82.001–.004 to come within the *Ex parte Young* exception to sovereign immunity. Accordingly, all State Defendants retain immunity from suit and are dismissed from the case. *See Morris*, 739 F.3d at 746.

---

[13] These are the Texas Secretary of State, Texas Attorney General, and Governor of Texas, in their official capacities.

13.     Because the State Defendants do not have a connection to enforcement of the challenged statutes, Plaintiffs also lack standing because their alleged injury is neither caused by nor "fairly traceable" to the State Defendants. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (majority op.) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

14.     To be entitled to injunctive relief, Plaintiffs must clearly show they have standing to maintain the application for preliminary injunction. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

15.     Plaintiffs have not demonstrated an injury in fact because they have not alleged that they are unable to apply to vote by mail under the Texas Election Code's provisions allowing mail-in ballots for those who will be outside their county of residence or confined in jail on Election Day or during the early-voting period. *See* TEX. ELEC. CODE §§ 82.001, .004; *Lujan*, 504 U.S. at 560.

16.     A Plaintiff that is an organization does not have organizational standing unless the organization satisfies the same Article III requirements applicable to individuals: injury in fact, causation, and redressability. *E.g., NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (citing *Lujan*, 504 U.S. at 560–61). In an appropriate case, an organization can establish an injury in fact by showing that the challenged law conflicts with the organization's mission and "perceptibly impair[s]" its activities. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

17.     A plaintiff "cannot manufacture standing by choosing to make expenditures based on" alleged harm that does not itself constitute injury in fact. *Clapper v. Amnesty Int'l*, 568 U.S. 398, 402 (2013).

18.     Plaintiffs TDP and its Chair, Gilberto Hinojosa, have not established organizational standing because there is no injury in fact by virtue of "uncertainty of the laws associated with voting by mail" alone. *See id.*

19.     A plaintiff that is an organization does not have associational standing to assert the claims of others unless it shows that those other parties have "indicia of membership" in the organization, which requires the members to "participate in and guide the organization's efforts." *Hunt v. Wash. State Apple*

*Advert. Comm'n*, 432 U.S. 333, 344 (1977); *Ass'n for Retarded Citizens of Dall. v. Dall. Cty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994).

20.     A political party does not have associational standing to sue on behalf of voters who cast ballots in the party's primary election unless those voters exhibit additional "indicia of membership" in the party beyond the casting of primary ballots. *See Hunt*, 432 U.S. at 344.

21.     Plaintiffs TDP and its Chair have not shown associational standing to sue on behalf of voting-class Plaintiffs because the only indicia of membership alleged is that these plaintiffs voted in the Democratic primary election. *See id.*

22.     No Plaintiff has standing to bring a race discrimination claim because no named Plaintiff has pleaded membership in a protected racial group or alleged how they are being discriminated against.

*Constitutional Voting Claims*

23.     In examining challenges to a state's election regulations, courts "must weigh 'the character and magnitude of the asserted injury to the rights protected by the [Constitution] that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

24.     State rules that impose a severe burden on constitutional rights must be "narrowly drawn to advance a state interest of compelling importance." *Id.* "Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable nondiscriminatory restrictions.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (quoting *Burdick*, 504 U.S. at 434).

25.     Under rational basis review, so long as the distinctions made in the challenged law bear a rational relationship to a legitimate governmental end, the law must be upheld. *McDonald v. Bd. of Election*

*Comm'rs of Chi.*, 394 U.S. 802, 809 (1969).

26.     The Twenty-Sixth Amendment provides that the "right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. CONST. amend. XXVI, § 1.

27.     The State's rational limitation on voting by mail does not implicate the fundamental right to vote. *See McDonald*, 394 U.S. at 807–09.

28.     Texas's mail-in ballot provisions, Texas Election Code Sections 82.001–.004, do not abridge the right to vote under the First, Fourteenth, or Twenty-Sixth Amendments, facially or as-applied, by allowing certain qualified voters to vote by mail. *See id.* at 807–09 (upholding absentee-ballot provisions under rational basis review).

29.     Texas has a legitimate and important regulatory interest in allowing individuals who are 65 years of age or older to vote by mail. *See Burdick*, 504 U.S. at 434.

30.     Texas has a legitimate and important regulatory interest in "the orderly administration and accurate recordkeeping" of its elections. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008).

31.     Texas has a legitimate and important interest in preserving the integrity of its elections, in preventing voter fraud, and in ensuring that voters are confident in the fairness and stability of Texas's elections. *See id.* at 196 ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters. Moreover, the interest in orderly administration and accurate recordkeeping provides a sufficient justification for carefully identifying all voters participating in the election process.").

32.     Texas is not immune from concerns about voter fraud associated with mail-in voting. As the Austin American-Statesman recently reported:

> Of the 91 Texas election fraud cases prosecuted from state investigations in the last decade, . . . [o]nly four of the 91 involved in-person voter

impersonation. Most cases involve abuse of mail-in ballots and of campaigns acting as voter assistants to help people mark their ballots.[14]

33.     There have been other reports of voter fraud tied to mail-in balloting in Texas.[15]

34.     In the trial challenging Texas's voter-identification law, evidence was offered by a party through its own election law expert that "there is significant voter fraud discovered by persons who cast ballots by mail." *See* Exhibit B, Report & Affidavit of Randall Buck Wood ¶ 1, *Veasey v. Perry*, No. 2:13-cv-00193 (S.D. Tex. June 27, 2014), ECF 363. The expert testimony revealed that voter fraud in mail-in voting is "a serious problem" and that it "very easy" to harvest or turn in a number of fraudulent votes in the mail-in voting context. *See* Exhibit C, Bench Trial, Day 2, *Veasey v. Perry*, at 202:15; 203:18-21. The same counsel who offered evidence of voter fraud in mail-in voting to attack the voter-identification law is now challenging Texas's mail-in ballot statute to allow an expanded application of it that would most certainly result in voter fraud throughout the state.

35.     The burden, if any, on individual voters under 65 stemming from Section 82.003 is outweighed by these legitimate and important regulatory interests. *See Timmons*, 520 U.S. at 358.

36.     Moreover, Plaintiffs have not met their burden of showing that voting in-person cannot be conducted safely in the State of Texas in the State's upcoming elections.

37.     The Court's Findings of Fact and Conclusions of Law above support the conclusion that Plaintiffs have not shown a likelihood that their age and race-discrimination claims under the Equal Protection Clause of the Fourteenth Amendment will succeed.

*Void-for-Vagueness Claim*

38.     Under the Fifth Circuit's void-for-vagueness rule, a civil "statute must be 'so vague and indefinite as really to be no rule at all'" to be considered unconstitutional. *Groome Res., Ltd. v. Parish of*

---

[14] Elizabeth Findell, *In election season in the Rio Grande Valley, watchful eyes at the polls* (Austin American-Statesman June 11, 2018), https://www.statesman.com/news/20180611/in-election-season-in-rio-grande-valley-watchful-eyes-at-polls.

[15] *See, e.g.*, Anna M. Tinsley and Deanna Boyd, *Four women in 'voter fraud ring' arrested. They targeted seniors on city's north side* (Fort Worth Star-Telegram Oct. 12, 2018), https://www.star-telegram.com/news/local/fort-worth/article219920740.html.

*Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000) (quoting *Seniors Civil Liberties Ass'n v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992)).

39.     Texas's mail-in ballot provisions, Texas Election Code Sections 82.001–.004, are civil statutes. *See id.*

40.     Upon a plain reading of Texas's mail-in ballot provisions, the Court finds the provisions are not "so vague and indefinite as really to be no rule at all" because the statute's language clearly and succinctly states the circumstances under which a Texas voter may early vote by mail. *See* TEX. ELEC. CODE §§ 82.001–.004; *Groome Res.*, 234 F.3d at 217.

*First Amendment Claim*

41.     The First Amendment does not protect speech that promotes or incites illegal activity. *E.g.*, *United States v. Williams*, 553 U.S. 285, 298 (2008).

42.     Under Texas law, it is a crime for voters to submit knowingly false applications to vote by mail, or for third parties to encourage voters to do so. *See* TEX. ELEC. CODE § 84.0041; *see also id.* § 276.013.

43.     By advising a Texas legislator of the law stated above, the Attorney General has not violated Plaintiffs' First Amendment right to free speech. *See, e.g.*, *Williams*, 553 U.S. at 298.

*Section 1985 and Section 11(b) Claims*

44.     To state a viable cause of action under 42 U.S.C. § 1985(3), a plaintiff must allege:

(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). A conspiracy under § 1985 requires a showing of class-based animus. *Id.* at 653.

45.     A state official cannot engage in a conspiracy with the employees of the agency he leads. *See id.*

12

46.     The Court does not find that Attorney General Paxton engaged in a § 1985 conspiracy to deprive Plaintiffs of their right to vote.

47.     Under Section 11(b) of the Voting Rights Act, "[n]o person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. § 10307(b).

48.     Plaintiffs do not have a private right of action under Section 11(b) of the Voting Rights Act. *See* 52 U.S.C. § 10308(d) (authorizing the Attorney General of the United States to bring civil actions for injunctive relief to stop a practice prohibited under Section 11); *Alexander v. Sandoval*, 532 U.S. 275 (2001) (setting out the standards for implied causes of action).

49.     "Limited precedent on Section 11(b) indicates that, in order to succeed on such a claim, a plaintiff must show both [1] an act of intimidation or attempt to intimidate, and [2] that the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985)).

50.     The Attorney General's letter in response to a legislator's inquiry does not violate Section 11(b) and the Court does not find that Attorney General Paxton otherwise violated Section 11(b) of the Voting Rights Act because Plaintiffs have not shown "an act of intimidation" or that the Attorney General acted with the "specific intent to intimidate or attempt to intimidate."

51.     Plaintiffs have not established that they are likely to prevail on their Section 1985 or Section 11(b) claims.

*Public Interest Factors*

52.     Plaintiffs have not demonstrated that they will suffer an irreparable injury because they have not proven that they will be deprived of the safe exercise of the franchise in the State's upcoming elections. *See Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

53.     The "inability [for a State] to enforce its duly enacted [laws] clearly inflicts irreparable harm

on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018).

54.     Plaintiffs have not demonstrated that the injunction will serve the public interest. See *Allied Mktg. Group, Inc.*, 878 F.2d at 809.

55.     Plaintiffs have not demonstrated that the threatened injury to them outweighs the potential damage that the injunction may cause State Defendants. *See id.*

56.     Plaintiffs are seeking injunctive relief too close to the July election, and a federal court considering a request to enjoin state election laws before an impending election must consider potential conflicts with the timing of elections and appellate proceedings. The Court concludes that it is too late for a federal court to issue injunctive relief. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam).

57.     Because Plaintiffs have not met their burden of persuasion on each factor to entitle them to preliminary injunctive relief, the Court finds that Plaintiffs' application for a preliminary injunction is **DENIED**.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Texas Bar No. 24087072
ANNE MARIE MACKIN
Texas Bar No. 24078898
CORY A. SCANLON
Texas Bar No. 24104599
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
michael.abrams@oag.texas.gov
anna.mackin@oag.texas.gov
cory.scanlon@oag.texas.gov

***Counsel for State Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2020 a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

*/s/ Michael R. Abrams*
MICHAEL R. ABRAMS
Assistant Attorney General