IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARC VEASEY, JANE HAMILTON, SERGIO DeLEON, FLOYD J. CARRIER, ANNA BURNS, MICHAEL MONTEZ, PENNY POPE, OSCAR ORTIZ, KOBY OZIAS, JOHN MELLOR-CRUMMEY, PEGGY HERMAN, EVELYN BRICKNER, GORDON BENJAMIN, KEN GANDY, LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC) and DALLAS COUNTY, TEXAS<br>    *Plaintiffs*,<br><br>v.<br><br>RICK PERRY, Governor of Texas; and JOHN STEEN, Texas Secretary of State,<br>    *Defendants*.<br><br>UNITED STATES OF AMERICA,<br>    *Plaintiffs*,<br><br>TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, IMANI CLARK, AND MICHELLE BESSIAKE,<br>    *Plaintiff-Intervenors*,<br><br>TEXAS ASSOCIATION OF HISPANIC COUNTY JUDGES AND COUNTY COMMISSIONERS, AND HIDALGO COUNTY,<br>    *Plaintiff-Intervenors*,<br><br>v.<br><br>STATE OF TEXAS, JOHN STEEN, in his Official capacity as Texas Secretary of State and STEVE McCRAW, in his Official capacity as Director of the Texas Department of Public Safety,<br>    *Defendants*. | Civil Action No.:<br>Case No. 2:13-CV-00193 (NGR)<br>[Lead Case]<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Civil Action No.:<br>2:13-CV-00263 (NGR) |

**EXHIBIT B**

| | | |
|---|---|---|
| TEXAS STATE CONFERENCE OF NAACP BRANCHES; and the MEXICAN AMERICAN LEGISLATIVE CAUCUS OF THE TEXAS HOUSE OF REPRESENTATIVES,<br>    *Plaintiffs*<br><br>v.<br><br>JOHN STEEN, in his official capacity as Secretary of State of Texas, and STEVE McCRAW, in his official capacity as Director of the Texas Department of Public Safety<br>    *Defendants.* | § § § § § § § § § § § § § § § § | Civil Action No.:<br>2:13-CV-00291 (NGR) |
| BELINDA ORTIZ, LENARD TAYLOR, EULALIO MENDEZ, JR., LIONEL ESTRADA, ESTELA GARCIA ESPINOSA, LYDIA LARA, MARGARITO MARTINEZ LARA, MAXIMINA MARTINEZ LARA, AND *LA UNION DEL PUEBLO ENTERO, INC.*<br>    *Plaintiffs*<br><br>v.<br><br>STATE OF TEXAS, JOHN STEEN, in His official capacity as Texas Secretary of State, and STEVE McCRAW, in his Official capacity as Director of the Texas Department of Public Safety<br>    *Defendants.* | § § § § § § § § § § § § § § § § § § | Civil Action No.:<br>2:13-CV-00348 (NGR) |
| BRIAN BIRDWELL<br>    *Third-Party Movant*<br><br>vs.<br><br>VEASEY,<br>    *Respondent.* | § § § § § § § § | CIVIL ACTION NO.<br>4:14-MC-00013-O |

## AFFIDAVIT OF RANDALL BUCK WOOD

**REPORT AND AFFIDAVIT OF RANDALL BUCK WOOD** – Page 2

| STATE OF TEXAS | § |
|---|---|
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned authority, on June __, 2014, personally appeared RANDALL BUCK WOOD, who stated under oath as follows:

"My name is Randall Buck Wood. I am an expert witness designated by the *Veasey* Plaintiffs in the above referenced case now pending in the United States District Court for the Southern District of Texas, Corpus Christi Division.

I hold a B.A. in History from the University of Texas at Austin and a L.L.B. from the University of Texas School of Law. I became a licensed Texas attorney in 1968. I was Director of the Elections division for the Texas Secretary of State from 1969 to 1972. I have practiced election law in Texas for more than 40 years. After leaving government service, I have consistently handled election matters, including election contests for candidates of both political parties. I have been involved in well more than a hundred election matters and have tried many dozens of election contests in court and/or before the Texas Legislature. Many of the reported state election law opinions I represented one side to the dispute. I have tried dozens of election contests in Texas and have handled numerous criminal matters involving elections. I have attended countless number of recounts, polling locations, election depositions and numerous legislative hearings concerning election law. I receive numerous contacts, nearly daily, each election cycle concerning elections, election contests and voter behavior.

A true and correct copy of my curriculum vitae is attached hereto as Exhibit "A" as a part of my report.

I have authored no publications within the last ten (10) years.

The reasonable and necessary rate for my expert witness services is $450 per hour and I

**REPORT AND AFFIDAVIT OF RANDALL BUCK WOOD** – Page 3

have been paid $10,000 to date.

I testified in deposition and at trial in the related matter of *State of Texas v. Eric H. Holder*; Case No. 1:12-cv-00128; In the United States District Court for the District of Columbia and such testimony is incorporated herein for all purposes. I have not testified at trial or in deposition as an expert witness in any other cases within the preceding four (4) years.

I have received no data or document production in this case that was considered by me in forming my opinions. The testimony and opinions herein are based upon my extensive training, education and experience in Texas Election Law.

Although I have not relied on others to direct my attention to my particular evidence, I have made my own judgment about the significance of any particular evidence that I have reviewed.

**Analysis and Conclusion:**

(1) In the many elections contests I have handled, often in-person voter fraud is alleged by one party or the other. I have been involved in scores of depositions, discovery tactics and interviews of witnesses concerning in-person voter fraud. Despite trying to locate it myself for clients, I have never in my extensive experience found one case of in-person voter fraud in Texas involving voter impersonation, voting dead people or other fraud that would be prevented by SB 14. On the other hand, there is significant voter fraud discovered by persons who cast ballots by mail. It is my opinion the Texas Legislature does not address ballot by mail because of the belief that more Anglo citizens case ballots by mail than do minority voters. SB 14 would do nothing to address mail-in ballot fraud. Instead, SB 14 will have a disparate impact on Latino and African-American voters, who, based upon my experience, more often than Anglos, lack one of

<u>**REPORT AND AFFIDAVIT OF RANDALL BUCK WOOD**</u> – Page 4

the acceptable forms of identification.

(2)   I have been involved in the drafting of election laws in this state. A careful balance was struck over the years in arriving at the former identification requirements to vote. The state's extensive history discriminating against voters was taken into account in crafting the former law. SB 14 dismantles this balance by essentially requiring a double registration scheme wherein a citizen must obtain registration to vote and then obtain an acceptable ID from another government agency.

(3)   I have extensive experience dealing with the Texas Legislature. It is my opinion SB 14 is designed to decrease the number of effective ballots cast by minority citizens. Furthermore, it is my opinion that it was the Legislature's purpose with SB 14 to discourage turnout among minority citizens.

(4)   It is my opinion that in-person voter fraud is not difficult to detect in an election contest or by law enforcement authorities. There are various techniques that can be used to discovery in-person voter fraud. Many of these methods I have described in the testimony I have given in the related case.

(5)   Though I have never seen it after extensively searching for it, it would not surprise me if there were isolated incidents of in-person voter fraud. If they occur, I am confident such cases are minuscule in number compared to other forms of voter fraud not addressed by SB 14. Also, it is my opinion that when and if in-person voter fraud occurs, it never affects the outcome of an election. In order to affect the outcome of an election, almost always several dozen votes would have to be cast fraudulently. Though this can and does happen with mail-in ballots, it is virtually impossible to accomplish with organized in-person voting fraud.

(6) It is my opinion that the substantially similar name requirement contained within SB 14 provides the front-line election worker with a great degree of discretion in whether or not to permit a person to vote when that person's ID does not exactly match the voter registration record. It is my experience that when election workers are given such discretion, the worker's individual biases tend to affect the decision as to who is permitted to vote whether such biases are racial or political.

(7) It is my opinion that voter registration records often do not match exactly the DPS records. Such differences are often the result of different data entry techniques. Nevertheless, such differences, when combined with the broad discretion given election workers, is likely to lead to persons being denied the right to vote.

(8) I am signing this report under penalties of perjury and swear that the matters contain therein are true and correct.

Signed this the _____ day of June, 2014.

_____
RANDALL BUCK WOOD

**REPORT AND AFFIDAVIT OF RANDALL BUCK WOOD** – Page 6