IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS DEMOCRATIC PARTY, GILBERTO HINOJOSA, Chair of the Texas Democratic Party, JOSEPH DANIEL CASCINO, SHANDA MARIE SANSING, and BRENDA LI GARCIA<br>   *Plaintiffs*,<br><br>*and*<br><br>LEAGUE OF UNITED LATIN AMERICAN CITIZENS and TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS,<br>   *Plaintiffs-Intervenors,*<br><br>v.<br><br>GREG ABBOTT, Governor of Texas; RUTH HUGHS, Texas Secretary of State, DANA DEBEAUVOIR, Travis County Clerk, and JACQUELYN F. CALLANEN, Bexar County Elections Administrator<br>   *Defendants.* | CIVIL ACTION NO.<br>5:20-cv-00438-FB |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## FACTS

1. Texas has an extensive history of disenfranchising voters.

2. Texas only permits citizens over the age of 65 to vote by mail without excuse in violation of the 26th Amendment.

1

3. In all circumstances, a state limiting vote by mail to citizens based solely on their age is violative of the Constitutional guarantee of the 26th Amendment that prohibits age discrimination in voting.

4. Even were the age limitation not facially invalid, the factual circumstances in Texas, with and without the pandemic, make the age limitation unconstitutional.

5. Furthermore, as applied to these Plaintiffs, the age limitation violates the U.S. Constitution.

6. Moreover, the age limitation, coupled with recent and likely to come, enacted and enforced state election policies, are designed to and in fact do, benefit white non-Hispanic voters and unconstitutionally burdened historical racial minorities.

7. As the state has grown more racially diverse, age based access to vote by mail not only has an age based discriminatory intent and effect but because racial minorities are disproportionately younger than the aging non-Hispanic white voters, the policy has racially discriminatory effect.

8. In the recent elections, the state leadership, including the Defendant Secretary of State, was well aware the racially discriminatory impacts of restricting vote by mail to older citizens and steadfastly refused to extend voting by mail to all eligible voters regardless of age.

9. Every other U.S. state except for four, facilitated voting by mail for all citizens, but Texas refused.

10. The citizens of this state are in the midst of the worst pandemic in modern history. Because of a novel coronavirus, and the disease it causes termed COVID-19, federal, state,

county and city officials have ordered at times various limitations statewide, the central feature of which is to limit contact between persons.

11.     Government ordered "social distancing" has had an effect on citizen behavior.

12.     At the beginning of this case, Plaintiffs pointed to an influential report from the Imperial College in the United Kingdom[1] that, now in hindsight, correctly projected continuous waves of COVID-19 infections, including even their rough timing, except that an additional wave occurred in Texas in the Summer of 2020 not reflected in the projection because the authors did not assume the state would try to re-open as fast as it did from shut down orders issued at the beginning of the pandemic:

---

[1] https://www.imperial.ac.uk/media/imperial-college/medicine/sph/ide/gida-fellowships/Imperial-College-COVID19-NPI-modelling-16-03-2020.pdf



13. Now, thankfully, vaccines have been developed and are being administered.

14. Despite this, an additional spring wave of infections are occurring including in Texas.

15. There are also worrisome signs of developing strains of the coronavirus that may evade the developed vaccines.

16. Also, there is hesitancy in a significant portion of the population toward the vaccines and it is not at all clear that a large enough portion of the population will be effectively vaccinated to stop the pandemic.

4

17. Indeed, it is very likely true that the globe, and Texas, is in for wave after wave of new infections until there is some measure of "herd immunity".[2]

18. Given these conditions, the recent elections for federal, state, county, city and other local offices were vastly impacted.

19. Importantly, voter behavior has changed.

20. Many voters will continue to avoid large public gatherings like in-person voting centers, as a result of these events.

21. Also, unfortunately the public has become politically and racially divided on the COVID-19 pandemic.

22. In the recent elections, statutorily authorized poll watchers utilized the coronavirus as a weapon, insisting on hovering over election workers and voters without wearing a mask, oftentimes in transparent effort to obstruct voting or vote processing.

23. The Secretary of State not only permitted poll watchers to utilize the coronavirus pandemic in this manner, but encouraged it.

24. Now, the state is considering additional election statutes that would further empower poll watchers to disrupt orderly elections and be utilized at polling locations in minority neighborhoods to further discourage in person voting.

25. Meanwhile, the disproportionally white non-Hispanic older voters are permitted to vote by mail from home and avoid state-empowered and abusive poll watchers.

26. Historically, most voters in Texas elections vote "in person" where they have contact with electronic equipment, election personnel, other voters and observers.

---

[2] http://www.euro.who.int/en/health-topics/communicable-diseases/influenza/data-and-statistics/pandemic-influenza/about-pandemic-phases

27. These very activities have been and still are heavily discouraged by various government orders and public experts.

28. Even were this pandemic to continue to ease, certain populations will feel the need and/or be required to continue social distancing.

29. Allowing, encouraging, and enforcing state law such that disproportionately white non-Hispanic voters can vote by mail while younger more diverse Texans have to vote in person at polling locations is part and parcel of recent state efforts to unconstitutionally burden voting by racial minorities.

30. The state's efforts to disenfranchise racial minorities has accelerated in the last decade.

31. In 2011, the Texas Legislature adopted Redistricting plans, a photo voter identification law and statutes criminalizing voter registration processes each of which was found to have discriminatory effects and two of which district courts determined were adopted with racially discriminatory intent.

32. Various policy and administrative decisions were made by state officers in the years since which had discriminatory effects.

33. In 2019, the Texas Secretary of State initiated a voter purge program that had the effect of removing from the voting rolls approximately 100,000 citizens, many of which had been recently naturalized.

34. The voter purge plan was rejected by this Court.

35. State leadership continued to push for the confirmation of that Secretary of State despite these events.

36. In the last decade, the state has aggressively prosecuted citizens for voting related "crimes" many of which amount to honest mistakes or were the result of poll worker error but these prosecutions have disproportionately focused on racial minorities.

37. In 2020 when the COVID-19 pandemic set in, the Secretary of State worked aggressively to shape the pandemic related election rules to advantage white non-Hispanic voters.

38. Texas was one of 5 states to resist allowing safe voting by mail.

39. Instead, Texas allowed disproportionately white non-Hispanic older voters to vote by mail but restricted the much more racially diverse younger voters to voting in person.

40. Meanwhile, the Texas Secretary of State did not require the wearing of mask in polling locations and otherwise failed to take reasonable steps to ensure safe in-person voting.

41. Although the state allowed additional days of early voting, early voting is disproportionately utilized by white non-Hispanic voters.

42. Citizens contracted COVID-19 while voting in person while voters granted the right to vote at home by mail did not.

43. At least one poll worker perished administering in person voting.

44. The Texas Secretary of State utilized his enforcement authority to prevent larger counties with diverse populations from putting into effect common sense election administration practices to facilitate voting during a pandemic.

45. The Texas Governor, after voting began and ballots started to be delivered, ordered, and the Secretary of State enforced, a policy that large urban and diverse counties could operate ballot drop locations only at county permanent offices thereby resulting in large urban

and diverse counties having roughly the same number of drop locations as rural, largely white non-Hispanic counties.

46. These and other pandemic related policies, were effective at diminishing minority voter turnout.

47. This diminishment in minority voter turnout also occurred in areas with higher minority populations and recent surges in COVID-19 cases.

48. After the election, Texas challenged the presidential election results nationwide.

49. Texas argued that other states that did not administer their elections in a racially discriminatory manner should have their election results disregarded.

50. The U.S. Supreme Court rejected Texas's effort to interfere with the election administration of other U.S. states.

51. Despite having administered its recent election to advantage the votes of white non-Hispanic citizens, the Texas Legislature is now holding hearings on large bills including many election changes designed to continue to advantage white non-Hispanic voters.

52. There is no evidence of material election fraud in the state but there is real evidence that the state's designed effort to minimize the voting power of racial minorities is effective.

53. Texas is poised to undertake even more racially discriminatory election administration measures in the Legislative Session about to wrap up in a few weeks.

54. Currently under consideration by the legislature are measures that further advantage white non-Hispanic voters, and lever off of the state's policy to limit no-excuse vote by mail to disproportionately white non-Hispanic voters over age 65.

55. One such measure gives further powers to poll watchers that will empower them to further disrupt and discourage voting at in-person polling locations in communities with high Latino, African-American and/or Asian-American voters.

56. Another measure would require affidavit for persons who assist voters, which must be included along with vote by mail carrier envelope.

57. Another measure would require persons under age 65 to provide proof of their disability in order to utilize the disability exception to vote by mail.

58. Another measure would prohibit a mail voter from curing a mail ballot that has been rejected by the ballot board.

59. Data shows that racial minorities, in particular those with non-Anglo surnames, are disproportionately more likely to have their mail ballot rejected and by prohibiting them from curing the ballot, the state policy will further exacerbate discrimination.

60. Even though these pieces of legislation have yet to pass, there have been numerous departures from normal procedure in their legislative histories including changing the rules in the Texas House and Senate to ensure or, at least, aid their passage.

61. The Governor has declared election measures a priority and given them emergency status during the Legislative session.

62. Legislative leaders have given every impression that a package of additional measures designed to advantage voting for white non-Hispanic voters will be enacted into law.

63. Texas officials make it harder for racial minorities to vote, while making it easier for white non-Hispanic voters to cast an effective ballot because of the voter's race.

64. Since Reconstruction, Texas has engaged in continuous efforts to advantage voting for white non-Hispanic citizens while disadvantaging voting for racial minorities.

65. African-American, Latino and Asian-American Voters are disproportionately members of and supporters of the Texas Democratic Party while white non-Hispanic voters are disproportionately supportive of Republican Party of Texas.

66. Voting in Texas is racially polarized with the political majority, white non-Hispanic voters, voting for opposite candidates, Republicans, than Latino, Asian-American and African-American voters who largely support Democrats.

67. Because state leadership is made of Republican officeholders, adopting racially discriminatory election rules advantages their election.

68. The closeness of the 2020 election results drives state legislative action to further restrict the right to vote.

69. Texas's continued effort to preference the disproportionately white non-Hispanic, older population with vote by mail and a myriad of other voting advantages violates the U.S. Constitution and federal law.

70. Whatever the political and racial majority, the U.S. Constitution prohibits a state from advantaging a subset of voters as Texas has done and intends to continue to do.

## JURISDICTION AND VENUE

71. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 2284; and pursuant to 52 U.S.C. § 10301.  Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 2284, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.  Venue is proper pursuant to 28 U.S.C. §§ 1391(b).

## PARTIES

### Plaintiffs

72. Plaintiff Texas Democratic Party is a political party formed under the Texas Election Code, whose address is 314 East Highland Mall Blvd. Suite 508, Austin, Travis County, TX 78752. The Texas Democratic Party is made up of members throughout the state, in every county, that are eligible voters and that are harmed by the unconstitutional conduct alleged herein.

73. Plaintiff Gilberto Hinojosa is Chairman of the Texas Democratic Party, Latino and a registered voter in Texas.

74. Joseph Daniel Cascino is a registered voter in Travis County, Texas who is eligible to vote, is a resident of Travis County, Texas, a citizen of the United States. He was born in 2000 and is of Italian-American descent. He desires to vote by mail-in ballot and would without the state's age restriction which discriminates against him based on his age.

75. Shanda Marie Sansing is a registered voter in Travis County, Texas who is eligible to vote, is a resident of Travis County, Texas, a citizen of the United States  She was born in 1960 and is white non-Hispanic. She desires to vote by mail-in ballot and would without the state's age restriction which discriminates against her based on her age.

76. Brenda Li Garcia is a registered voter in Bexar County, Texas who is eligible to vote, is a resident of Bexar County, Texas, a citizen of the United States. She was born in 1975 and is Latina. She desires to vote by mail-in ballot and would without the state's age restriction which discriminates against her based on her age and her race.

**Defendants**

77. Defendant Ruth Hughs is sued in her official capacity as the Texas Secretary of State and may be served with process at 900 Congress, Suite 300 Austin, Travis County, Texas 78701.

78. Defendant Dana DeBeauvoir is sued in her official capacity as the Travis County Clerk and Election Administrator and may be served with process at 5501 Airport Blvd, Austin, Travis County, TX 78751.

79. Defendant Jacquelyn F. Callanen, is sued in her official capacity as the Bexar County Elections Administrator and may be served with process at 1103 S. Frio, Suite 100, San Antonio, TX 78207

## CLAIMS

### Count 1
### Race and Language Minority Discrimination, Section 2, Voting Rights Act

80. Plaintiffs reallege the facts set forth above.

81. Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because they result in a denial of the right to vote on account of race and language minority, in that, under the totality of the circumstances, Plaintiffs and minority voters are denied an equal opportunity to participate effectively in the political process.

82. These Election Conditions also violate Section 2 because they deny and abridges the right to vote on account of race and language minority.

12

### Count 2

### Race Discrimination, 14th Amendment

83. Plaintiffs reallege the facts set forth above.

84. Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, violate the Fourteenth Amendment to the Constitution of the United States because they purposely deny equal protection in voting to Plaintiffs and other minority voters on account of race and ethnic origin.

### Count 3

### Race Discrimination, 15th Amendment

85. Plaintiffs reallege the facts set forth above.

86. Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, violate the Fifteenth Amendment to the Constitution of the United States because they purposely deny and abridge the right to register and vote to Plaintiffs and other minority voters on account of race and ethnic origin.

### Count 4

### Equal Protection, 14th Amendment, Anderson/Burdick

87. Plaintiffs reallege the facts set forth above.

88. Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because they mandate

arbitrary and disparate treatment of voters and deny equal access to the right to vote to eligible citizens.

89.     These Election Conditions impose <u>severe burdens</u> on voters, in time, inconvenience and expense.  The burden is severe whether measured by how it affects a single voter or by how many voters it affects.

90.     These Election Conditions <u>facially discriminate</u> between classes of voters (such as between those having and those over the age of 65 or those with a disability that do not fit under the ultimate definition the state or various counties impose).

91.     Either the <u>severe burden</u> described above, standing alone <u>as applied</u>, or the <u>facial discrimination</u>, standing alone, are sufficient to require that These Election Conditions be judged by strict scrutiny, and can survive only if their specific terms meet a compelling state interest (actual, not hypothetical) and if each of its provisions is narrowly tailored to meet that compelling interest in the least restrictive way.  In this inquiry, the burden of proof is on Texas.

92.     Indeed, Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, cannot even meet the less exacting test (applicable where a voting regulation is not burdensome and does not classify on its face) of balancing Texas' interest claimed here (modest at best) against the critically important interests of Plaintiffs and other Texas registered voters who are disfranchised by these Election Conditions, especially as that balancing test is applied against the background of Texas' longstanding and recent history of purposeful racial and ethnic discrimination, and in light of the number of poor, disabled and under age 65 voters targeted by these Election Conditions.

## Count 5

**Denial of Free Speech, First Amendment applied through the 14th Amendment**

93. Plaintiffs reallege the facts set forth above.

94. Voting and participating in the election process is a form of expression which is the ultimate in free speech and association entitled to First Amendment protection. In light of the Supreme Court's cases giving strong First Amendment protection to campaign funds spent to influence voters, the voters themselves can hardly be entitled to less protection.

95. As a restriction on free speech and association, Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, violate the guarantee of the First Amendment.

## Count 6

**Abridgment of the Right to Vote based on Age, 26th Amendment**

96. Plaintiffs reallege the facts set forth above.

97. Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted, as described above, amount to abridgment of the right to vote based on the age of the voter.

98. The state law limiting no-excuse mail voting includes a facial age limitation on who can vote by mail.

99. This claim is brought as applied and as a facial challenge.

100. Texas's limitation of vote by mail by age, violates the 26th Amendment to the U.S. Constitution.

101. Although the United States Court of Appeals for the Fifth Circuit reversed this Court's Preliminary Injunction based on the 26th Amendment claim, Plaintiffs are entitled to review of this claim on the merits, after final trial and full appellate review thereafter.

102. In the event the preliminary injunction rulings on appeal are dispositive of this claim, Plaintiffs hereby make this claim which amounts to a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

103. All voters under the age of 65 face an unconstitutional burden, because of their age, to their fundamental right to vote.

104. As applied, the individual plaintiffs, as well as the Plaintiff TDP members, face an unconstitutional burden, because of their age, to their fundamental right to vote.

## EQUITY

105. Plaintiffs have no adequate remedy at law. Unless restrained, Defendants will injure and continue to injure Plaintiffs and other Texas voters in the manner set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

106. Issue a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure Rule 57, declaring that these Election Conditions are illegal and unconstitutional as described above, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. 10301 and the First, Fourteenth, Fifteenth and Twenty-Sixth Amendments to the United States Constitution.

107. Enjoin the Defendants, their agents, employees, and those persons acting in concert with them, from enforcing or giving any effect to the requirements of these Election

Conditions, including enjoining Defendants from conducting any elections utilizing these Election Conditions.

108. Make all further orders as are just, necessary, and proper to ensure complete fulfillment of this Court's declaratory and injunctive orders in this case.

109. Issue an order requiring Defendants to pay Plaintiffs' costs, expenses and reasonable attorneys' fees incurred in the prosecution of this action, as authorized by the Voting Rights Act and the Civil Rights Attorneys Fees Awards Act of 1976, 52 U.S.C. §§ 10310(e) & 42 U.S.C. § 1988.

110. Retain jurisdiction and require Texas to obtain preclearance pursuant to Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c) with respect to its voting practices and procedures.

111. Grant such other and further relief as it deems proper and just.

This the 16th day of April, 2021.

Respectfully submitted,

By: /s/ Chad W. Dunn
Chad W. Dunn
State Bar No. 24036507
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com

K. Scott Brazil
State Bar No. 02934050
Brazil & Dunn, LLP
13231 Champion Forest Drive, Suite 406

        Houston, Texas 77069
        Telephone: (281) 580-6310
        Facsimile: (281) 580-6362
        scott@brazilanddunn.com

        Dicky Grigg
        State Bar No. 08487500
        Law Office of Dicky Grigg, P.C.
        4407 Bee Caves Road, Suite 111
        Austin, Texas 78746
        Telephone: 512-474-6061
        Facsimile: 512-582-8560
        dicky@grigg-law.com

        Martin Golando
        The Law Office of Martin Golando, PLLC
        SBN #: 24059153
        405 N. Saint Mary's, Ste. 700
        San Antonio, Texas 78205
        (210) 892-8543
        martin.golando@gmail.com

        ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

    I certify that on April 16, 2021, the foregoing amended complaint was filed *via* the Court's ECF/CM system, which will serve a copy on all counsel of record.

        */s/Chad W. Dunn*
        Chad W. Dunn