IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Texas Democratic Party, Gilberto Hinojosa, Chair of the Texas Democratic Party, Joseph Daniel Cascino, Shanda Marie Sansing, and Brenda Li Garcia, *Plaintiffs,* | § § § § § | |
| and | § § | Civil Action No. 5:20-CV-00438-FB |
| League of United Latin American Citizens, And Texas League of United Latin American Citizens, *Plaintiffs-Intervenors,* | § § § § § | |
| v. | § § | |
| Greg Abbott, Governor of Texas; Ruth Hughs, Texas Secretary of State, Ken Paxton, Texas Attorney General, Dana Debeauvoir, Travis County Clerk, and Jacquelyn F. Callanen, Bexar County Elections Administrator, *Defendants.* | § § § § § § § | |

## DEFENDANT RUTH HUGHS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs challenge a provision of the Texas Election Code that allows mail-in voting for any voter at least 65 years or older, claiming the provision is unconstitutional and violates the Voting Rights Act. They filed this lawsuit early in the COVID-19 pandemic seeking injunctive relief in advance of impending primary and general elections. A year later, with highly effective vaccines against COVID-19 widely available, their Second Amended Complaint relies heavily on unsupported conjecture about the trajectory of the COVID-19 pandemic and future "election policies" not yet enacted. Plaintiffs theorize those future conditions will combine with Texas's mail-in voting requirements to burden their rights in future elections. Plaintiffs use those speculative assertions as

levers to elevate claims of unlawful burden arising from in-person voting—the predominate method of voting in this State. The emphasis Plaintiffs place on such speculative harm underscores their inability to plausibly allege that Texas's age requirement for mail-in voting "on its own" is unconstitutional and violative of the Voting Rights Act. Defendant Ruth Hughs, in her official capacity as Texas Secretary of State, respectfully seeks the dismissal of the claims asserted against her.[1] Plaintiffs lack standing to assert their speculative claims; their claims are unripe and barred by sovereign immunity; and the claims fail on the merits as pleaded.

## I.   BACKGROUND

### A.   Texas law allows voters to vote by mail only in limited circumstances.

For more than a century, Texas law has required most voters to cast their ballots in person either on election day, Tex. Elec. Code ch. 64, or during an early-voting period prescribed by the Legislature, *id.* § 82.005. The only exceptions are for voters who face unique hardships ingoing to the polls. Voters may apply to vote by mail in only one of four instances—if they: (1) anticipate being absent from their county of residence; (2) have a disability that prevents them from appearing at the polling place; (3) are 65 or older; or (4) are confined in jail. TEX. ELEC. CODE §§ 82.001-.004. "Disability" for the purposes of the Election Code is defined to allow a qualified voter to vote by mail if the "voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health." *Id.* § 82.002(a).

### B.   Procedural posture of the case.

Plaintiffs filed this action on April 7, 2020 and sought a preliminary injunction that was

---

[1] Plaintiff's Second Amended Complaint removed reference to Governor Greg Abbott and Attorney General Ken Paxton as defendants. Even if Plaintiffs had named them as defendants, sovereign immunity would bar Plaintiffs' claims against them. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 180–81 (5th Cir. 2020).

substantively identical to the injunction that plaintiffs sought in state court. Doc. 1. On May 19, this Court issued its opinion and order on the preliminary injunction requiring no-excuse-mail-in balloting in Texas. Doc. 90. State Defendants appealed and sought a stay of the injunction pending the appeal. A Fifth Circuit panel granted the stay. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). On the merits, Plaintiffs defended the injunction on the grounds of their Twenty-Sixth Amendment claims only. The Fifth Circuit ultimately vacated the injunction and remanded the case back to this Court. *Tex. Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020).  On April 16, 2021, Plaintiffs and Plaintiff-Intervenors filed amended complaints.

## II.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a federal court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). Under Rule 12(b)(1), the Court may consider any of the following: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

### B.    Plaintiffs lack standing to complain of speculative future "election policies" and pandemic conditions.

Standing is an indispensable element of federal court jurisdiction. *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 561 (1992). To establish standing, a plaintiff must show: (1) an injury-in-fact that is (2) fairly traceable to the defendant's challenged action (causation) and that is (3) redressable by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three requirements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan*, 504 U.S. at 561. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotation marks omitted).

Plaintiffs emphasize harm caused by Section 82.003 *when combined* with unenacted "election policies" and future pandemic conditions. Doc. 141 ¶¶15–20, 81, 84, 86, 88, 92, 95.  But such claims are purely "conjectural." *Lujan,* 504 U.S. at 560. For example, Plaintiffs vaguely allude to "developing strains of the coronavirus"; speculate about the possible impact of "[vaccine] hesitancy"; and theorize about changed "voter behavior" impacting voters willingness to vote in-person in the future. Doc. 141 ¶¶15-20. Plaintiffs' claims are especially implausible when considering that Texas experienced record voter turnout in the 2020 presidential election despite the pandemic.[2] Plaintiffs also rely on legislation that has "yet to pass" in support of their claimed harm. *Id.* at ¶60. Such assertions do not support any injury to Plaintiffs that is actual or imminent. Further, Plaintiffs' cannot plausibly claim that injuries from laws not yet enacted are "fairly traceable to the challenged action of [the Secretary]," or redressable by the Secretary. *Id.* Plaintiffs lack standing to complain of such speculative harm.

**C.     Plaintiffs' claims regarding unspecified future "election policies" and pandemic conditions are not ripe.**

Plaintiffs claims are not ripe because they rely—in whole or in part—on future contingent events, namely the passage of unspecified but yet-to-be-enacted "election policies" as well as uncertain

---

[2] Texas Secretary of State, *Turnout and Voter Registration Figures (1970-current)*, https://www.sos.state.tx.us/elections/historical/70-92.shtml.

pandemic conditions. "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ... [until a] decision has been formalized and its effects felt in a concrete way by the challenging parties.' " *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Determining whether an issue is ripe for judicial review requires considering "[t]he fitness of the issues for judicial decision and ... the hardship to the parties of withholding court consideration." *Id.* at 809; *see Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (citation omitted)).

Plaintiffs' claims are not fit for judicial decision and Plaintiffs would suffer no hardship from the court withholding consideration. Obviously, the Court cannot analyze policies and laws that have not been enacted yet. Nor should the Court evaluate the safety of in-person voting in future elections in light of the recent introduction of widely available vaccines against COVID-19 dramatically altering the trajectory of the pandemic. Finally, Plaintiffs cannot claim hardship in withholding court consideration when they do not identify any impending election in which voting in-person will cause concrete harm. Plaintiffs' reliance on future contingent events makes their claims unripe.

## D.    Sovereign immunity bars Plaintiffs' vague injunction against "Election Conditions."

Finally, to the extent plaintiffs rely on "election policies" apart from section 82.003—enacted or as yet unenacted—they are barred by sovereign immunity. Plaintiffs seek to enjoin undefined "Election Conditions"—a phrase Plaintiffs do not define but that appears to consist in part of policies and laws that have not yet been enacted. Plaintiffs do not plead facts to show that the Secretary has a role in enforcing the unspecified "Election Conditions." Sovereign immunity bars their claims.

"[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities, subject to an established exception: the *Ex parte Young* doctrine." *McCarthy*

*ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted). Thus, Plaintiffs' claims fail unless they fit that exception. *Ex parte Young* "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation . . . ." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted).As a consequence, *Ex parte Young* applies only when the defendant has sufficient connection to the enforcement of the challenged statute.

The Fifth Circuit held in this case that the Secretary has a sufficient connection to the enforcement of Section 82.003 to overcome sovereign immunity, but emphasized that "[d]etermining whether *Ex parte Young* applies to a state official requires a provision-by-provision analysis, *i.e.*, the official must have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Abbott*, 978 F.3d at 179. For example, the Fifth Circuit has recently held that Secretary lacks the requisite connection to the enforcement of certain statutory provisions relating to early voting protocols. *See*, *Mi Familia Vota v. Abbott*, 977 F.3d 461, 463–66 (5th Cir. 2020); *Texas Democratic Party v. Hughs*, No. 20-50683,---F.3d---, 2021 WL 1826760, at *3 (5th Cir. May 7, 2021). Plaintiffs do not plead facts to show the Secretary's requisite connection to the enforcement of the "election policies" and "Election Conditions" about which they complain. And Plaintiffs cannot plausibly claim the Secretary has an enforcement role regarding unspecified laws that have yet "to be enacted," and that may never be enacted. Sovereign immunity bars any such claim against the Secretary.

### III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a

motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff,'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)), a plaintiff must plead specific facts and cannot rely merely on "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B.   The Fifth Circuit's Opinion in this case forecloses Plaintiffs' Twenty-Sixth Amendment Claim.

The Fifth Circuit has already held that Plaintiffs' Twenty-Sixth Amendment "claim fails because conferring a benefit on another class of voters does not deny or abridge the plaintiffs' Twenty-Sixth Amendment right to vote." *Abbott*, 978 F.3d at 194. Because Section 82.003's age distinction does not offend the Twenty-Sixth Amendment, Plaintiff's claim must be dismissed.

## C.   Plaintiffs' claims of unconstitutional race discrimination fail.

Plaintiffs complain of race discrimination in violation of the Equal Protection Clause and the Fifteenth Amendment. Doc. 141 ¶¶83–86. Because they do not meet their burden of alleging plausible claims for relief, their claims should be dismissed.

From the outset, Plaintiffs' racial discrimination claims under the Equal Protection Clause and Fifteenth Amendment fail because the Plaintiffs do not plead facts to show intentional discrimination, a necessary component of those claims. *See, Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 481–82 (2000) ("whether under the Fourteenth or Fifteenth Amendment, [a plaintiff] has been required to establish that the State or political subdivision acted with discriminatory purpose."); *City of Mobile v. Bolden*, 446 U.S. 55, 62 (1980) (plurality opinion) ("Our decisions . . . have made clear that action by a State that is racially neutral on its face violates the Fifteenth Amendment only if motivated by a discriminatory

purpose."); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). "Allegations [of discriminatory intent] that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004).

Because the Plaintiffs do not allege that Section 82.003 was passed with a racially discriminatory purpose, they have failed to state a claim for racial discrimination under the Fifteenth Amendment and Equal Protection Clause. *Brown v. City of Shreveport*, 158 F.3d 583 (per curiam) (unpublished) (affirming dismissal because Plaintiff had "not alleged sufficient facts to state a claim under the Fourteenth or Fifteenth Amendments that the City's redistricting plan was enacted with the purpose of intentional discrimination against the black minority registered voters or that an actual discriminatory effect resulted."). Nor would any such allegation of discriminatory purpose be plausible. When Texas extended absentee voting to voters 65 years of age or older, it was part of a significant revision of the Election Code passed after Texas (among other States) ratified the Twenty-Sixth Amendment.[3] One purpose of these revisions was "to bring the Texas Election Code into conformity with" with the Twenty-Sixth Amendment.[4] The Legislature adopted this bill, which both lowered the voting age to 18 *and* allowed all voters over 65 to vote by mail, by an overwhelming majority.[5] Plaintiffs cannot plausibly allege that the law was motivated by racial discrimination.

Having failed to plausibly allege discriminatory purpose, the Court must analyze whether Plaintiffs have stated a claim for a violation of the Equal Protection Clause under the rational-basis standard for facially neutral statutes that do not involve a suspect classification or infringe a

---

[3] Tex. S. Con. Res. 65, 62d Leg., R.S., 1971 Tex. Gen. Laws 3867.
[4] House Comm. On Elections, Bill Analysis, S.B. 1047, 64th Leg., R.S. (1975), https://lrl.texas.gov/LASDOCS/64R/SB1047/SB1047_64R.pdf#page=82.
[5] H.J. of Tex., 64th Leg., R.S. 4204 (1975); S.J. of Tex. 64th Leg., R.S. (1975).

fundamental right. *Miller v. Johnson*, 515 U.S. 900, 913 (1995). As set forth below, *infra* pp.13–14, Plaintiffs fail to state a claim under that standard.

Moreover, for the same reasons that the Fifth Circuit concluded that "no denial or abridgment of the right to vote under the Twenty-Sixth Amendment ever occurred," *Abbott*, 978 F.3d at 194, Section 82.003 does not constitute a denial or abridgment of the right to vote under the Fifteenth Amendment as a matter of law. The right to vote is not "abridged" unless the challenged law "creates a barrier to voting that makes it more difficult for the challenger to exercise her right to vote relative to the *status quo*, or unless the *status quo* itself is unconstitutional." *Id.* at 192. In short, "a law that makes it *easier* for others to vote does not abridge any person's right to vote." *Id.* at 191. The Fifth Circuit's interpretation of the operative language in the Twenty-Sixth Amendment conforms with the Supreme Court's jurisprudence regarding the same operative language in the Fifteenth Amendment.

The Supreme Court has refused to extend the protections of the Fifteenth Amendment to circumstances where, as here, the challenging party retains the ability to "register and vote without hinderance" because under such circumstances the plaintiff's rights "have not been denied or abridged by anyone." *Bolden*, 446 U.S. at 65; *id.* at 84, n.3 (Stevens, J., concurring in judgment) (characterizing the plurality opinion as concluding that "the Fifteenth Amendment applies only to practices that directly affect access to the ballot."). Plaintiffs cannot plausibly argue that their access to the ballot is hindered by a law that makes it easier for others to vote. *See, Buchanan v. City of Jackson*, 708 F.2d 1066, 1069 (6th Cir. 1983) ("absent any allegation of actual interference in the voting or registration processes, plaintiffs have failed to state a claim under the Fifteenth Amendment."). This is of course why the Plaintiffs attempt to manufacture access restrictions from other sources, including from laws that are yet "to be enacted." For the reasons already discussed, *supra* 3–7, the Court lacks jurisdiction over those claims. Plaintiffs' Fifteen Amendment challenge to Section 82.003 must be dismissed because they allege no purposeful racial discrimination and no denial or abridgment of any right

protected by the Fifteenth Amendment. Finally, the mandate rule "forecloses relitigation" of whether Section 82.003 abridges the right to vote of anyone, because that issue was "expressly or impliedly decided by the appellate court." *U.S. v. Lee*, 385 F.3d 315, 321 (5th Cir. 2004).

**D.      Plaintiffs do not plead viable claims under Section 2 of the Voting Rights Act.**

Plaintiffs' claim that Section 82.003 causes a discriminatory result under Section 2 must fail as a matter of law. Plaintiffs allege that "Texas's age limitation for mail voting, on its own and as combined with the election policies enacted and soon to be enacted . . . violate Section 2 of the Voting Rights Act, 52 U.S.C. § 10301" as both a denial and abridgement of "the right to vote on account of race and language minority." Doc. 141 ¶¶ 81–82. Not only does this vague and speculative claim lack fair notice or invoke the Court's jurisdiction as explained *supra*, for the same reasons the claim must also fail as a matter of law for the purposes of stating a claim for which relief may be granted under Rule 12(b)(6).

Plaintiffs make a wholly conclusory allegation that the Secretary has violated Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (now codified at 52 U.S.C. § 10301). Plaintiffs have failed to plead any of the substantive requirements or specific facts to make out a Section 2 claim. To plausibly allege a violation of Section 2, Plaintiffs must show that the challenged "standard, practice, or procedure" has a discriminatory effect under factors utilized by the Supreme Court in *Thornburg v. Gingles*, 478 U.S. 30 (1986). The relevant portions of § 10301 read:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a **denial or abridgement** of the right of any citizen of the United States to vote on account of race or color[.]
> . . .
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301 (emphasis added).

First, the Fifth Circuit has already held in this case that Section 82.003 does not result in a "denial or abridgement" of the right to vote under the Twenty-Sixth Amendment—even in the context of the pandemic in an as-applied challenge. 978 F.3d at 192. Second, because Plaintiffs base their Section 2 claims on speculation about the effect of laws that have yet to pass, the Court not only lacks jurisdiction over the claim, but the claim does not meet the causation requirement for Section 2 claims under the totality-of-the-circumstances test.

If offering mail-in ballots to those over sixty-five years of age does not impose a discriminatory burden on the basis of age within the meaning of a constitutional amendment specifically prohibiting denials or abridgments on the basis of age, Plaintiff's quest to invalidate the provision based on *racial* discrimination claims is no less implausible. *See Frank v. Walker*, 768 F.3d 744, 753 (7th Cir. 2014) (even though a disparate outcome is shown, state does not "deny" anyone the right to vote under Section 2 by imposing voter ID requirements unless the disparate result is attributable to discrimination by the state). The provision of a privilege to those over sixty-five takes nothing away from the right to vote for those not entitled to no-excuse mail-in ballots, even in the context of the global COVID-19 pandemic. *Abbott*, 978 F.3d at 192–93. Accordingly, the Court should dismiss Plaintiff's claim under Section 2 because Section 82.003 does not deny or abridge the right to vote as a matter of law.

Even if Plaintiffs had plausibly alleged a disparate result under Texas's election scheme, which they have not, they still have not plausibly alleged a viable Section 2 claim. Section 2 requires the plaintiff to establish (1) the challenged law causes minority voters' inability to elect candidates of their choice, *Gingles*, 478 U.S. at 50; (2) the inability to elected their preferred candidates is "on account of race," 52 U.S.C. § 10301(a); and (3) "under the 'totality of circumstances,' [minority voters] do not possess the same opportunities to participate in the political process and elect representatives of their

choice enjoyed by other voters," *LULAC, Council No. 4434 v. Clements*, 999 F.2d 831, 849 (5th Cir. 1993) (en banc).

Plaintiffs have not pleaded a cognizable claim under this standard because they have not alleged that Section 82.003 has caused minority voters' inability to elect their preferred candidates under this regime. Instead, Plaintiffs appear to complain about several bills before the Legislature that have yet to pass. ECF 141 ¶¶ 51–62. In doing so, Plaintiffs necessarily allege a speculative harm that does not allow this Court to consider the "totality of the circumstances" in deciding whether a violation of Section 2 is even plausibly alleged. *See* 52 U.S.C. § 10301; *Clements*, 999 F.2d at 849. In addition, even if Plaintiffs could establish a "lack of success at the polls" for minority voters, their claims should still be dismissed for failing to plausibly allege that "the reasons for, or causes of, these electoral losses" are "racial" and not "partisan." *Clements*, 999 F.2d at 853–54. Only by requiring such pleadings can Courts ensure that Section 2 is not "loosed from its racial tether." *Id.* (cleaned up). "The Voting Rights Act does not guarantee that nominees of the Democratic Party will be elected, even if black voters are likely to favor that party's candidates. Rather, § 2 is implicated only where Democrats lose because they are black, not where blacks lose because they are Democrats." *Clements*, 999 F.2d at 854 (quotation and citation omitted).

For these reasons, the Court should dismiss Plaintiff's claim under Section 2 of the Voting Rights Act.

**E.    Section 82.003 easily passes the rational-basis review applicable to Plaintiffs' challenges under the First and Fourteenth Amendments.**

The Fifth Circuit did not decide the applicable standard of review that this Court must apply to Plaintiffs' constitutional claims but noted in *dicta* that "age-based distinctions are evaluated [under rational-basis review] in the usual case" and that "we have not seen any authority to support that it would require strict scrutiny as the district court initially applied." *Abbott*, 978 F.3d at 194. Plaintiffs' multifarious claims that Texas has abridged their "right to vote" fail because the right to vote is not at

issue in this case. Instead, this case turns on a "claimed right to receive [and case] absentee ballots." *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969). Texas permits Plaintiffs to vote by other means, and the Constitution does not guarantee them a right to vote by mail. *Id. McDonald* instructs that the "right to vote" is not "at stake" here and that rational-basis review applies. *Id.* at 807. Likewise, because their right to vote is not denied, and they may vote by other means, Plaintiffs suffered no denial of any right to free speech and free association in the election process. At heart, Plaintiffs claims are for age discrimination, and unlike race-based distinctions, "States may discriminate on the basis of age without offending the Fourteenth Amendment, if the age classification in question is rationally related to a legitimate state interest." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83–84 (2000). Again, the mandate rule prevents the relitigation of this issue. *Lee*, 385 F.3d at 321.

Texas's decision to facilitate voting by those over 65, which is common among the States, is "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1977). Individuals over 65 (as a group) face greater challenges in attending the polls. For example, many reside in nursing homes and have limited mobility. Though other may also have difficulties reaching the polls, the line need not be "perfectly tailored to that end," so long as the distinction is not arbitrary. *Box v. Planned Parenthood of Ind. &., Inc.*, 139 S. Ct. 1780, 1782 (2019). Texas's Legislature may "take on step at a time, addressing itself to the phase of the problem which seems most acute." *F.C.C. v. Beach Commc'ns Inc.*, 508 U.S. 307, 316 (1993). That laws allowing the elderly to vote by mail have existed across multiple States[6] without challenge for 45 years indicates that they are at least rational.

---

[6] *E.g.,* Ind. Code § 3-11-10-24(a)(5); Ky. Rev. Stat § 117.085(a)(8); Miss. Code § 23-1415-715(b); La Stat. § 18:1303(J); Tenn. Code § 2-6-201(5)(A); Tex. Elec. Code § 82.003.

**F.      Alternatively, Plaintiffs' claims under the First and Fourteenth Amendments fail even under the *Anderson/Burdick* test.**

Even if the Court were to conclude that the stricter *Anderson/Burdick* test applies, the Complaining Parties have failed to state a claim. Because "[e]very decision that a state makes in regulating an election will, inevitably, result in somewhat more inconvenience for some voters than for others," the Supreme Court has developed a balancing test for claims related to the franchise. *Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 601 (4th Cir. 2016). Under this standard, the Court must first identify the relevant state action, and then "weigh 'the character and magnitude of the asserted injury'" to Plaintiffs' constitutionally protected right "against 'the precise interests put forward by the State as justifications for the burden imposed.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). State actions that impose a "severe" burden on the right to vote are closely scrutinized. *Id.* "Lesser burdens, however, trigger less exacting review." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Courts are careful when identifying the nature of the state action because "[t]o deem ordinary and widespread burdens severe would be to subject virtually every electoral regulation to strict scrutiny"—an outcome "the Constitution does not require." *Clinman v. Beaver*, 544 U.S. 581, 593 (2005).

Texas's law requiring most voters to vote in person is justified by the State's "compelling interest in preserving the integrity of its election process." *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). As the Supreme Court has explained, the "risk of voter fraud is real," and it "could affect the outcome of a close election." *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 195-96 (2008). Moreover, courts around the country—including this one—have recognized that "the potential and reality of [vote] fraud is much greater in the mail-in-ballot context than with in-person voting." *Veasey*, 830 F.3d at 239; *id.* at 306 n. 46 (Jones, J. , concurring in part and dissenting in part); *Purcell*, 549 U.S. at 4; *Griffin v. Roupas,* 385 F.3d 1128, 1130-31 (7th Cir. 2009); *cf. Crawford*, 553 U.S. at 225 (Souter, J., dissenting) ("absentee-ballot fraud . . . is a documented problem").

Plaintiffs have failed to state a claim under the *Anderson/Burdick* framework because they do not credibly allege that in-person voting "on its own" constitutes a burden on their right to vote. Instead, they invoke unenacted laws and speculation about future pandemic conditions to elevate their claims of burden. For reasons previously discussed, *supra* 3–7, the Court lacks jurisdiction over such claims. The Court should hold that in-person voting "on its own" does not constitute any burden on Plaintiffs' Constitutional rights under the First and Fourteenth Amendments. Plaintiffs have therefore failed to state a claim for relief.

## IV.    CONCLUSION

The Court should dismiss this suit for lack of jurisdiction or for failure to state a claim for which relief can be granted.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief – General Litigation Division

 /s/ Matthew Bohuslav
MATTHEW BOHUSLAV
Texas Bar No. 24069395
CORY A. SCANLON
Texas Bar No. 24104599
Assistant Attorneys General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

Phone: 512-463-2120
Fax: 512-320-0667
matthew.bohuslav@oag.texas.gov
cory.scanlon@oag.texas.gov
*Counsel for Defendant Ruth Hughs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021 a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

/s/ Matthew Bohuslav
MATTHEW BOHUSLAV
Assistant Attorney General