## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **TEXAS DEMOCRATIC PARTY,** ) | |
| **GILBERTO HINOJOSA, Chair of the** ) | |
| **Texas Democratic Party, JOSEPH DANIEL** ) | |
| **CASCINO, SHANDA MARIE SANSING,** ) | |
| **and BRENDA LI GARCIA,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **LEAGUE OF UNITED LATIN** ) | |
| **AMERICAN CITIZENS (LULAC), and** ) | |
| **TEXAS LEAGUE OF UNITED LATIN** ) | |
| **AMERICAN CITIZENS,** ) | |
| ) | |
|     **Plaintiff-Intervenors,** ) | |
| ) | |
| **V.** ) | **CIVIL ACTION NO. SA-20-CA-438-FB** |
| ) | |
| **RUTH HUGHS, Texas Secretary of State;** ) | |
| **DANA DEBEAUVOIR, Travis County** ) | |
| **Clerk; and JACQUELYN F. CALLANEN,** ) | |
| **Bexar County Elections Administrator,** ) | |
| ) | |
|     **Defendants.** ) | |

### ORDER REGARDING DEFENDANT BEXAR COUNTY ELECTIONS
### ADMINISTRATOR JACQUELYN CALLANEN'S MOTION TO DISMISS

Before the Court are Defendant Bexar County Elections Administrator Jacquelyn Callanen's

Motion to Dismiss Plaintiffs' Second Amended Complaint and Plaintiffs-Intervenors' Amended

Complaint (docket no. 148) filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure, plaintiffs' and plaintiff-intervenors' response (docket no. 156), and defendant Callanen's

reply (docket no. 158).  After careful consideration, the Court grants defendant Callanen's motion to

dismiss for lack of standing under Rule 12(b)(1) and alternatively grants the motion to dismiss for

failure to state a claim under Rule 12(b)(6).   The Court also determines *sua sponte* that it lacks (standing) jurisdiction over defendant Travis County Clerk Dana DeBeauvoir pursuant to Rule 12(b)(1) and alternatively determines *sua sponte* that plaintiffs have failed to state a claim against defendant DeBeauvoir under Rule 12(b)(6).[1]   Accordingly, defendants Callanen and DeBeauvoir shall be dismissed as party-defendants to this action.   Plaintiffs' and plaintiff-intervenors' claims against the remaining defendant, Texas Secretary of State Ruth Hughs, remain pending for disposition.

<u>BACKGROUND</u>

Plaintiff's and plaintiff-intervenors (collectively, "plaintiffs") challenge the validity of Section 82.003 of the Texas Election Code, a state law which allows individuals age 65 and older to vote by mail.   Section 82.003 was enacted by the Texas Legislature and Governor, and is administered using the official forms provided to local election officials by the Texas Secretary of State.   In addition to naming Governor Greg Abbott, Texas Attorney General Ken Paxton, and Texas Secretary of State Ruth Hughs as defendants, plaintiffs also brought suit against local elections officials for two of Texas' 254 counties: Bexar County Elections Administrator Jacquelyn Callanen and Travis County Clerk Dana DeBeauvoir and  (collectively, "local early voting clerks" or "local election officials").

Defendant Callanen's motion to dismiss currently pending before the Court asserts two arguments.   First, she argues the claims against the local early voting clerks should be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) because plaintiffs' alleged injuries are not fairly traceable to them and the judicial remedy for those injuries would involve relief directed

---

[1]Although defendant DeBeauvoir has not sought dismissal under Rule 12(b)(1), a federal district court is required to address the jurisdictional issue of standing *sua sponte*.  *Ford v. NYL Care Health Plans of Gulf Coast, Inc.,* 301 F.3d 329, 332 (5th Cir. 2002); *see also Texas Democratic Party v. Hughs,* 997 F.3d 288, 290 ("[W]e always have jurisdiction to determine our own jurisdiction.").   A federal district court also has the authority to consider the sufficiency of a complaint under Rule 12(b)(6) and dismiss a party *sua sponte*.   *Shawnee Int'l, N.V. v. Hondo Drilling Co.,* 724 F.2d 234, 236 (5th Cir. 1984).

against the Secretary of State, not the local election officials.  Second, defendant Callanen argues the claims against the local early voting clerks should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because plaintiffs have not pleaded facts showing that any act or omission of defendant Callanen–or any local early voting clerk–violated their rights.  In response, plaintiffs argue that, because the Secretary of State and the local early voting clerks have statutory duties in the enforcement of early voting-by-mail, all three are proper defendants to their challenge to the validity of Section 82.003 of the Texas Election Code.

<u>STANDARDS OF REVIEW</u>

Rule 12(b)(1) provides for the dismissal of a case for lack of subject-matter jurisdiction. Because subject-matter jurisdiction goes to the heart of the Court's power to hear the case, the Court should consider the Rule 12(b)(1) challenges before addressing the Rule 12(b)(6) challenge. *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). In considering a Rule 12(b)(1) motion, the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint, undisputed facts, and the Court's resolution of disputed facts. *Spotts v. United States,* 613 F.3d 559, 566 (5th Cir. 2010). In other words, the Court may "weigh the evidence and satisfy itself" that subject matter jurisdiction exists. *MDPhysicians & Assocs., v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981)).

Rule 12(b)(6) permits the Court dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, the Court assumes the complaint's factual allegations, but not its legal conclusions, are true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 680-81 (2009). The Court then determines if the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Facial

3

plausibility requires enough facts to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Rule 12(b)(6) limits the Court's review to the complaint, documents attached to the complaint, and documents attached to the motion that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010).

<u>DISCUSSION</u>

I.      Rule 12(b)(1) Motion to Dismiss for Lack of Standing

"To establish standing under Article III of the Constitution, plaintiffs must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.,* 140 S. Ct. 1615, 1618 (2020).  In the Rule 12(b)(1) context, plaintiffs must plead sufficient facts of standing to show that jurisdiction exists. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (explaining that burden on plaintiffs at pleading stage is to allege plausibly that requirements to establish standing have been met); *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) ("[P]laintiff constantly bears the burden of proof that jurisdiction does in fact exist.").

The Court begins the analysis of plaintiffs' cause of action against the local election officials under the foundation set forth in the Fifth Circuit's opinion on interlocutory appeal in this case.  The Court sets out these holdings as they establish guidance for determination of this Court's jurisdiction, as well as establish parameters for this Court's action.

Plaintiffs allege they suffer a sufficient injury in fact because they are, unlike older voters, forced to vote in person, particularly given the risk of contracting or spreading COVID-19.  Plaintiffs further

4

imply their alleged injury is fairly traceable to the local officials' enforcement of Section 82.003 and that their injury would be redressed by an order requiring non-discriminatory access to mail-in voting.

Defendant Callanen challenges the causation and redressability prongs, arguing the voter plaintiffs lack standing because the local early voting clerks did not cause plaintiffs' alleged injury and they are in no position to redress it. As explained by the Fifth Circuit on interlocutory appeal in this case, responsibilities for enforcing Texas' absentee ballot laws are delineated between the Secretary of State and local elections officials. *Texas Democratic Party v. Abbott* ("*TDP II*")*, 978 F.3d 168, 180 (5th Cir. 2020). The Secretary "has the duty to design the absentee ballot form" for dissemination to local officials and others who request it, Tex. Elec Code § 31.002(a), and "[t]he Secretary would need to correct the form should the judiciary invalidate the age-based option." *Id.* Thus, "the Secretary has a role in causing the claimed injury and is in a position to redress it at least in part." *Id.* This "is enough to confer standing to the voter plaintiffs to sue the Secretary." *Id.*

However, "some duties [relating to absentee-ballot applications] fall on other officials." *TDP II,* 978 F.3d at 180. For example, a "local early voting clerk," such as defendants Callanen and DeBeauvoir, "shall review each application for a ballot to be voted by mail." *Id.* (quoting Tex. Elec. Code § 86.001(a)). A local early voting clerk shall also "mail without charge an appropriate official application form.'" *Id.* (quoting Tex. Elec. Code § 84.012).

"Because local authorities are required to use the Secretary's absentee-ballot form outside of emergency situations, [Tex. Elec Code] § 31.002(d), the Secretary has the authority to compel or constrain local officials based on actions she takes as to the application form." *Id.* Moreover, "a finding that the age-based option [violates] younger voters' right to vote might lead to prohibiting the Secretary from using an application form that expressed an unconstitutional absentee-voting option." *Id.* at 181.

Plaintiffs argue they have standing to sue the local early voting clerks because these local officials are statutorily responsible for reviewing applications for a mail-in ballot and mailing the Secretary's official application form to a voter who qualifies to receive an absentee ballot. *See* (Docket no. 156 at page 4). To this end, plaintiffs rely on the analysis applied the Fifth Circuit in *TDP II*, which found that the voter plaintiffs have standing to sue the Secretary of State, to support their contention that the local officials are also proper parties to this suit. *Id.* Plaintiffs contend:

> The Fifth Circuit held that the Secretary's statutory responsibilities for designing absentee ballot applications and providing them to local officials and others who want to disseminate them were sufficient to show that injuries alleged by plaintiffs in the enforcement of the law were traceable to and redressable by the Secretary of State. So too are defendant Callanen's responsibilities for "review[ing] each application for a ballot to be voted by mail [and] mail[ing] without charge an appropriate official application form."

*Id.* (citations omitted) (emphasis added).

Plaintiffs' argument is not supported by the record. Contrary to plaintiffs' assertion, the Secretary's statutory responsibility "for . . . providing [absentee ballot applications] to local officials . . . who want to disseminate them" was not part of the analysis in *TDP II*. Instead, the Fifth Circuit determined the voter plaintiffs have standing to sue the Secretary because she: (1) "had a role in causing the claimed injury" given her statutory "duty to design the required application form," and (2) "is in a position to redress [that injury] at least in part" given her "need to correct the form should the judiciary invalidate the age-based option." *TDP II,* 978 F.3d at 178. Because the Secretary's statutory duty to provide the official application form to local officials was not part of the Fifth Circuit's analysis, plaintiffs cannot rely upon such a finding to confer standing to sue the local early voting clerks. *See Crenwelge v. First Steps Nursing & Therapy Servs.,* No. 5:20-CV-941-DAE (W.D. Tex. May 21, 2021) (denying relief where litigant's claim was "not supported by the record").

As discussed in *TDP II*, plaintiffs must do more than cite the statutory duties of an election official to establish standing to sue.  *Id.*  Plaintiffs must show the performance of the election official's duties had a role in causing their "claimed injury" and that the official "is in a position to redress it at least in part."  *Id.; see also Texas Democratic Party v. Hughs,* 997 F.3d 288, 291 (5th Cir. 2021) (finding Secretary "played no role" in causing claimed injury and was in no position to redress it because local early voting clerk was statutorily tasked with establishing temporary branch polling places); *Jacobson v. Florida Sec'y of State,* 974 F.3d 1236, 1238 (11th Cir. 2020) (explaining that any injury from Florida's ballot order statute for general elections, which allegedly favored Republican Party candidates, was not fairly traceable to defendant Florida Secretary of State as would be required for voters' and organizations' Article III standing where nonparty county supervisors of elections, rather than Secretary, had responsibility for placing candidates on ballot in order that law prescribed and supervisors were independent officials who were not subject to Secretary's control).

Here, it does not appear that plaintiffs have met their burden.  Although plaintiffs cite statutory duties which fall on local early voting clerks, they make no challenge to the local officials' responsibilities to review applications and mail the official application form, which is furnished by the Secretary, a party not before the Court.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992) ("To establish the traceability causal connection between the injury and the conduct complained of, the injury must be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.") (internal quotation omitted). As noted, the Secretary designs the official application form, would need to correct it if the judiciary invalidates the age-based option, and the local early voting clerks are compelled and constrained by the actions the Secretary takes on the form.  *TDP II*, 978 F.3d at 178, 180.  Without more, plaintiffs have

7

not shown a causal connection between their claimed injury and the local early voting clerks'
performance of their statutory duties.  Alternatively, even were the Court to conclude the local early
voting clerks have a role in causing plaintiffs' claimed injury (because they are statutorily charged with
mailing the allegedly discriminatory form to voters), plaintiffs have not shown how these local officials
have any authority to redress their claimed injury in any way.  *See Sanchez v. R.G.L.,* 761 F.3d 495, 506
(5th Cir. 2014) (noting that relief sought need not completely cure injury but desired relief must lessen
it)

As explained in *TDP II*, "the Secretary is the 'chief election officer of the state.'" 978 F.3d at
180 (citing Tex. Elec. Code § 31.001).  "Thus, a finding that the age-based option discriminates against
voters' right to vote "*might lead to prohibiting Secretary from using an application form* that expressed
an unconstitutional option."  978 F.3d at 180 (emphasis added).  If, as and when this happens, the
Secretary would need to design a corrected form and furnish it to the local early voting clerks for
distribution to eligible voters.  *See id.*  Until that time, the local election officials are statutorily bound
to mail-out the current form–which is considered by statute to be the "appropriate official application
form"–as presently designed and furnished by the Secretary.  *See id.* at 181 (explaining that early voting
clerk has statutory duty to mail Secretary's "appropriate official application form" to eligible voters)
(quoting Tex. Elec. Code § 84.012).

Plaintiffs state that "[t]here has never been any court finding that election administrators are not
proper defendants in challenges to the enforcement of election law."  (Docket no. 156 at page 4 n.2).
Plaintiffs contend that, "although the Fifth Circuit has raised questions about the Secretary's status as
a proper defendant in other cases, those questions arise because of the special status the Secretary carries
as an arm of the State, which can assert sovereign immunity."  *Id.* (citing *Texas Democratic Party v.*

*Hughs*, 997 F.3d 288, 291 (5th Cir. 2021) (evaluating Secretary's amenability to suit and applying precedents to determine whether she was sufficiently connected to enforcement of state law so as to be proper defendant under *Ex parte Young*).  However, in *TDP II*, the Fifth Circuit specifically found the voter plaintiffs have standing to sue the Secretary before turning to the question of whether she is protected by sovereign immunity.  978 F.3d at 178.

In any event, plaintiffs contend that "none of the Fifth Circuit precedent regarding the Secretary suggests that county election officials, who do not have sovereign immunity, are not proper parties." *Id.*  Out of an abundance of caution, the Court again turns to this case on interlocutory appeal, along with recent Texas state court opinions, for additional guidance before definitively determining whether plaintiffs have standing to sue defendants Callanen and DeBeauvoir.

Although "Texas's vote-by-mail statutes are administered, at least in the first instance, by local election official[s]," those local early voting clerks perform their duties subject to the "detailed and comprehensive written directives and instructions relating to" the rules set out in the Texas Election Code.  *Texas Democratic Party v. Abbott* ("*TDP I*")*,* 961 F.3d 389, 399-40 (5th Cir. 2020) (opinion staying this Court's preliminary injunction).  According to the Texas Election Code, the Secretary directs, instructs, assists and advises the local early voting clerks.  *TDP II,* 978 F.3d at 180 (quoting Tex. Elec. Code §§ 31.003-.004).  The Fifth Circuit interprets this provision as "requiring the Secretary to take action with respect to elections."  *Id.* (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 429 (5th Cir. 1997)).  Specific to the issue before this Court today, "local authorities are required to use the Secretary's absentee-ballot form outside of emergency situations, [Tex. Elec Code] § 31.002(d)," and "the Secretary has authority to compel or constrain local officials based on actions she takes as to the application form."  *Id.* (citing *City of Austin v. Paxton,* 943 F.3d 993, 1000 (5th Cir. 2019)).

Local early voting clerks possess only those powers "granted in express words" or "necessarily or fairly implied in an express grant" by the Texas Election Code. *State v. Hollins,* 620 S.W.3d 400, 406 (Tex. 2020) (internal quotations omitted). These implied powers are themselves narrow and must be "indispensable," as opposed to "simply convenient." *Id.* The powers are governed by a "lengthy, detailed, and comprehensive Election Code." *Id.* at 402. Acts by local election officials that are outside the scope of the Texas Election Code constitute *ultra vires* conduct which undermines the integrity of the election process. *Richardson v. Hughs,* 978 F.3d 220, 224-26 (5th Cir. 2020). Although certain implied powers may create a narrow range of implied powers, the Legislature's silence on an issue raises the presumption that it has not granted that power. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("[W]e believe every word excluded from a statute must also be presumed to have been excluded for a purpose.").

These principles were recently discussed by the Texas Supreme Court in *Hollins*, an action involving the State's challenge to a local early voting clerk's authority under Section 82.003, the voting provision at issue in this case. 620 S.W.3d at 400. There, the Court found that the Texas Election Code did not explicitly authorize a county clerk to send out mail-in ballot applications to persons who did not fall within the five categories of voters eligible to vote by mail, meaning the county clerk had no inherent authority to engage in that conduct. *Id.* at 409. The Court noted that the Code also made the county clerk clearly subordinate to the Secretary of State, who was explicitly identified as the official ultimately responsible for statewide election regulation and who, by statute, had a mandatory duty under statute to ensure uniformity of the election process across Texas. *Id.* at 408 (noting Tex. Elec. Code § 31.003 explicitly requires Secretary of State to "obtain and maintain uniformity in the application, operation, and interpretation" of the Election Code and requiring her to "prepare detailed and

comprehensive written directives and instructions" to local early voting clerks). Because the county clerk had no inherent authority to act, because the Secretary was the ultimate authority overseeing elections who had a statutory duty to maintain uniformity, and because the county clerk's actions "were clearly *ultra vires* and in derogation of the statutory uniformity requirement," the Court found that the trial court's duty to grant a temporary injunction was essentially ministerial because the county clerk's duty was essentially ministerial. *Id.*

       *State v. El Paso County* is also instructive. 618 S.W.3d 812, 840–41 (Tex. App.–El Paso 2020), (mandamus dismissed). There, the El Paso Court of Appeals considered the authority of a county judge to issue an order under the Texas Disaster Act, and found *Hollins* distinguishable. *Id.* First, the Court noted that the structure of the Texas Disaster Act is not as hierarchical as the Election Code. *Id.* at 840. Specifically, "[u]nlike the Election Code, which explicitly vests ultimate regulatory authority over local officials in one executive [referring to the Texas Secretary of State], the Texas Disaster Act does not make the Governor the sole official responsible for addressing a disaster." *Id.* Second, the Court continued, "unlike the Election Code which requires uniformity of action across the entire State, the Texas Disaster Act does not require any specific response during a disaster, but instead creates a flexible framework for cooperation among various officials at the state and local levels." *Id.* Thus, the Secretary's actions in *Hollins* were "necessitated by a mandatory duty to maintain uniformity statewide, which, in turn, made resolution of the injunction appeal ministerial because there was only one possible outcome." *El Paso Cty,* 618 S.W.3d at 840. "Here," the Court observed, "the Act does not create mandatory statutory duties that require any specific response as a preordained outcome." *Id.* at 841. Finally, the Court explained, "unlike *Hollins*, which involved a county official exercising authority that had not been conferred by statute," Section 418.108 of the Texas Disaster Act "explicitly confers

emergency authority onto the county judge without reference to any preclearance requirements from the Governor." *Id.* Therefore, the Court concluded, the county judge "clearly had the authority to issue his order." *Id.*

This case presents issues closer to *Hollins* than *El Paso County*. As in *Hollins*, the Texas Election Code does not explicitly authorize local early voting clerks to relent in the enforcement of Section 82.003 as written, meaning that these officials have no inherent authority to do anything other than carry out their statutory responsibilities. *See* 620 S.W.3d at 409. Here, those duties are limited to "review[ing] applications for mail-in ballots, Tex. Elec. Code § 86.001(a), and "mail[ing] without charge the official application form," *id.* § 84.012, furnished by the Secretary of State. *Id.* § 31.002(b). When performing these responsibilities, the local early voting clerks are compelled and constrained "by the actions the Secretary takes on the official application form" and it is the Secretary's use of that form–*i.e.,* her duty to design and need to correct it–which might be prohibited were the judiciary to invalidate the age-based option. *TDP II,* 978 F.3d at 180.

As pointed out by the Fifth Circuit, local early voting clerks are not required to use the "sample form" furnished by the Secretary in an emergency. *TDP II,* 978 F.3d at 180. The Texas Election Code defines an emergency as situation in which "the official form is unavailable or as otherwise provided by this code." Tex. Elec Code § 31.002(d). This provision, however, does not explicitly give local early voting clerks the authority to design an application form for mail-in ballots if the official form is unavailable, meaning they have no inherent authority to engage in that conduct. Nor does the Texas Election Code otherwise provide that a local early voting clerk has the authority to correct the Secretary's official form or mail-out an application that eliminates an unconstitutional absentee-voting option, again meaning they have no inherent authority to do so. Accordingly, although not required to

use the Secretary's sample absentee-ballot form, local early voting clerks remain compelled or constrained by the actions the Secretary takes on the official application even in an emergency situation as defined by Section 31.002(d).

In sum, relying on their success on the standing question on interlocutory appeal, plaintiffs suggest that the same result is compelled now because local early voting clerks have authority to enforce Section 82.003.  *See* (Docket no. 156 at page 4).  On interlocutory appeal, the Texas state officials maintained that plaintiffs lacked standing because the "[a]cceptance or rejection of an application to vote-by-mail falls to local, rather than state, officials."  *TDP I,* 961 F.3d at 399.  The Fifth Circuit reasoned that, although Texas' vote-by-mail statutes are administered by local officials, it is the Texas Secretary of State who "has the authority to compel or constrain local officials based on actions she takes as to the application form."  *TDP II,* 978 F.3d at 180 (citing *City of Austin,* 943 F.3d at 1000).  Specifically, the Secretary has the duty to "obtain and maintain uniformity in the application, operation, and interpretation of' Texas's election laws," including by "designing the application form for mail-in ballots, and to provide that form to local authorities" for distribution to eligible voters.  *Id.* (statutory citations omitted).  Based on that statutory scheme, and the Secretary's "need to correct the form should the judiciary invalidate the age-based option," the Fifth Circuit found the voter plaintiffs had standing to sue the Secretary of State because their voting-related injuries were fairly traceable to and redressable by the Secretary.  *Id.* at 178.

The question presented–whether plaintiffs could demonstrate standing when the appeal named state-level officials, but no local ones–was the inverse of the one now before the Court, where the Secretary and local officials are named as defendants.  Nonetheless, as plaintiffs' suggest, the Fifth Circuit's reasoning on interlocutory appeal is germane to the instant motion.

Plaintiffs argue they have standing to sue the early voting clerks because these local officials are statutorily responsible "for reviewing each application for a ballot to be voted by mail and mailing without charge an appropriate official application form."  (Docket no. docket no. 156 at page 4) (statutory citations omitted).  To establish their injury is traceable to the local early voting clerks, plaintiffs have to prove a causal connection between their injuries and the conduct of which they complain.  *See TDP II*, 978 F.3d at 177 (citing *Thole,* 140 S. Ct. at 1618).  To show their alleged injury is redressable, plaintiffs have to prove that these local election officials are in a position to lessen their injury.  *Id.* at 178.  Finally, in deciding whether plaintiffs have satisfied the traceability and redressability requirements, the Court must consider the extent of the local voting election clerks' authority under Texas law when it comes to performing their statutory duties.  See *id.* (considering extent of Secretary of State's authority under Texas law when it comes to age-based absentee voting provision when determining whether plaintiffs have standing to sue Secretary Hughs).

In *TDP II*, the Fifth Circuit determined that local early voting clerks are, as a matter of law, subordinate to the Secretary when carrying out their statutory vote-by-mail duties, and expressly under the control of the Secretary based on the actions she takes as to the required official application form. *TDP II,* 978 F.3d at 178, 80.  The local early voting clerks "are required to use the Secretary's absentee ballot form outside of emergency situations," *id.*, and they have no authority to act independently of the Secretary's actions even in an emergency as one defined by the Texas Election Code.  Because Texas law places all responsibility for designing the required official application form on the Secretary of State, the local early voting clerks have no role in determining whether the official application form expresses an unconstitutional absentee-voting provision.  Because Texas law places all responsibility on the Secretary for correcting the form should the judiciary invalidate the age-based option, the local

early voting clerks are in no position to lessen plaintiff's claimed injury.  Though there is a division of

responsibilities, plaintiffs have not established the causation and redressability requirements necessary

to confer standing on the voter plaintiffs to sue the local early voting clerks.  *See Harding v. Edwards,*

484 F. Supp. 3d 299, 319-20 (M.D. La. 2020) ("It is a matter of clear Fifth Circuit precedent that the

"buck stops" with the Secretary of State when it comes to traceability and redressability of

voting-related injuries) (discussing standing analysis in *TDP I*, 961 F.3d at 397).  Accordingly,

defendants Callanen and DeBeauvoir are not proper defendants and shall be dismissed as parties

pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

II.      Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

In support of their argument against dismissal under Rule 12(b)(1), plaintiffs imply this Court

should assume jurisdiction and proceed to decide the Rule 12(b)(6) motion because issues of fact are

central to both subject matter jurisdiction and their claims on the merits.  *See* (Docket no. 156 at page

2) ("Because Defendant Callanen plays a substantial and important role in enforcing the age-based

eligibility requirement for absentee voting, her motion is due to be denied.").  To give plaintiffs their

full day in court, and out of an abundance of caution, the Rule 12(b)(6) motion to dismiss for failure

to state a claim upon which relief can be granted will be considered in the alternative.

The difference between dismissing a complaint because the court lacks subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1) versus where the plaintiff has failed to state

a claim under Federal Rule of Civil Procedure 12(b)(6) is a difference not of degree but of kind. *See Bell*

*v. Hood,* 327 U.S. 678, 682 (1946).  A district court can resolve factual disputes in evaluating its

jurisdiction under Rule 12(b)(1), but must accept the pleaded facts as true in determining whether the

complaint state a claim upon which relief can be granted under Rule 12(b)(6).  *Doe v. Harrell,* 841 F.

App'x 663, 668 (5th Cir. 2021).  Here, the issue with plaintiffs' amended complaints is the absence of sufficient factual allegations against the local early voting clerks.

By way of their amended complaints, plaintiffs and plaintiff-intervenors challenge the age-based limitation imposed by state law on the eligibility of voters to early vote by mail contending that these limitations impair voting access for racial and language minorities and voters under the age of 65. Plaintiffs and plaintiff-intervenors also make related allegations about various voting-related actions taken by state elected officials during the COVID-19 pandemic. Plaintiffs allege the state law restriction on age-based eligibility to vote by mail and various proposals currently under consideration in the Texas Legislature enforcing the state law, allowing "disproportionately white non-Hispanic voters to vote by mail while younger more diverse Texans have to vote in person at polling locations is part and parcel of recent state efforts to unconstitutionally burden voting by racial minorities." (Docket no. 141 at ¶¶ 22-29). Plaintiffs also raise  "[v]arious policy and administrative decisions . . . made by state officers" in the last decade.  (Docket no. 141 at ¶¶ 30-37).  Plaintiffs maintain that "state leadership, including Defendant Secretary of State, was well aware [of] the racially discriminatory impacts of restricting vote by mail to older citizens and steadfastly refused to extend voting by mail to all eligible voters regardless of age." (Docket no. 141 at ¶ 8).  Plaintiffs also specifically challenge the manner in which state officials administered voting procedures since the onset of the COVID-19 pandemic, noting that the Secretary of State did not require the wearing of masks in polling locations, prohibited populous counties from implementing practices to "facilitate voting during a pandemic" and restricted the locations at which county officials could place "ballot drop locations[.]" (Docket no. 141 at ¶¶ 37-47). Plaintiffs also state that, after the November 2020 election, Texas state officials undertook a challenge

to the nationwide results of the presidential election contest, and challenge various election-related bills pending before the state legislature. (Docket no. 141 at ¶¶ 48-63).

Plaintiffs assert six claims. First, they allege that the age restriction placed on eligibility to vote early by mail by Texas Election Code § 82.003 violates the prohibition against race and language minority discrimination in Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, because nonwhite voters "are disproportionately younger than the aging non-Hispanic white voters[.]" (Docket no. 141 at ¶¶ 7, 80-82). In their second and third claims, plaintiffs allege that this same age limitation on eligibility to early vote by mail, also violates the Fourteenth and Fifteenth Amendments of the United States Constitution. (Docket no. 141 at ¶¶ 83-86). In their fourth claim, plaintiffs allege that the state law age limitation on eligibility to early vote by mail, as well as the voting conditions created by the COVID-19 pandemic, violate voters' equal protection rights under the Fourteenth Amendment under the *Anderson/Burdick* standard by imposing "severe burdens" on voters in terms of time, inconvenience, and expense, and facially discriminating between different classes of voters. (Docket no. 141 at ¶¶ 87-90). Finally, in their fifth and sixth claims, plaintiffs allege that the state law age limitation on eligibility to early vote by mail violates the First and Twenty-Sixth Amendments by abridging the free speech rights of voters who are not eligible to early vote by mail. (Docket no. 141 at ¶¶ 93-104). Plaintiffs seek declaratory and injunctive relief, and an award of attorney's fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. §§ 10310(e). (Docket no. 141 at ¶¶ 106-09). Plaintiffs also request the Court retain jurisdiction and require Texas to obtain preclearance as to its voting practices and procedures under Section 3(c) of the Voting Rights Act, 52 U.S.C. § 10302(c). (Docket no. 141 at ¶ 110).

Similarly, plaintiff-Intervenors contend that Texas Election Code § 82.003 violates the First, Fourteenth, and Twenty-Sixth Amendments and Section 2 of the Voting Rights Act by allowing all

eligible voters over age 65 to early vote by mail while restricting early voting by mail for younger

voters. (Docket no. 142 at ¶¶ 1, 11).  Like plaintiffs, plaintiff-intervenors also raise various statements

and actions of state officials, such as various election-related bills under consideration in the Texas

Legislature, Governor Abbott's designation of "election integrity" as an emergency item for the 2021

legislative session, the Secretary of State's decision not to require individuals to wear masks at polling

places, and the Governor's proclamation imposing limits on ballot drop-off locations. (Docket no. 142

¶¶ 13, 33-35).

Plaintiff-intervenors assert four claims. First, they assert a facial challenge to Texas Election

Code § 82.003, alleging that "[e]ven absent pandemic conditions," its age limitation on eligibility to

early vote by mail constitutes racial and language minority discrimination in violation of Section 2 of

the Voting Rights Act, 52 U.S.C. § 10301. (Docket no. 142 at ¶¶ 45-50).  Plaintiff-intervenors also

assert an *Anderson/Burdick* claim that the age-based limitation imposed by Texas Election Code §

82.003 violates their First and Fourteenth Amendment rights. (Docket no. 142 at ¶¶ 51-59). Finally,

plaintiff-intervenors, like plaintiffs, allege that Texas Election Code § 82.003 violates the Twenty-Sixth

Amendment by abridging their right to vote on the basis of age. (Docket no. 142 at ¶¶ 60-62).

Plaintiff-intervenors seek declaratory and injunctive relief and an award of attorneys' fees and costs.

(Docket no. 142 at 18).

Defendant Bexar County Elections Administrator Jacquelyn Callanen moves to dismiss under

Rule 12(b)(6) arguing that plaintiffs' and plaintiff-intervenors' claims arise entirely from the acts and

omissions of state officials, and assert constitutional and Voting Rights Act challenges to the age-based

provision of state law over which the local early voting clerks have no control.  The Court agrees

plaintiffs and plaintiff-intervenors do not plead facts showing that the local early voting clerks violated

their rights or are in a position to provide the relief sought. Indeed, their pleadings make no mention of the local early voting clerks other than to identify them as defendants. Because plaintiffs and plaintiff-intervenors do not plead facts sufficient to state any claim against defendants Callanen and DeBeauvoir upon which relief could be granted, the local early voting clerks shall be dismissed in the alternative from this litigation pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

CONCLUSION

IT IS THEREFORE ORDERED that Defendant Bexar County Elections Administrator Jacquelyn Callanen's Motion to Dismiss Plaintiffs' Second Amended Complaint and Plaintiffs-Intervenors' Amended Complaint (docket no. 148) is GRANTED such that plaintiffs' and plaintiff-intervenors' claims against defendant Callanen are DISMISSED for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and DISMISSED in the alternative for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that plaintiffs' and plaintiff-intervenors claims against defendant Dana DeBeauvoir, Travis County Clerk, are *sua sponte* DISMISSED for lack of standing pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and *sua sponte* DISMISSED in the alternative for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FINALLY ORDERED that Jacquelyn F. Callanen, Bexar County Elections Administrator, and Dana deBeauvoir, Travis County Clerk, are DISMISSED as party-defendants in the above-styled

and numbered cause.  Plaintiffs' and plaintiff-intervenors' claims against the remaining defendant,

Texas Secretary of State Ruth Hughs, remain pending for disposition.

It is so ORDERED.

SIGNED this 9th day of August, 2021.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE